UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI – CIVIL DIVISION
CASE NO. 20-CV-23771-KMM

Segundo Toste, individually,

           Plaintiff,

v.

The Beach Club at Fontainebleau
Condominium Association, Inc., a
Florida corporation, Russell S. Jacobs,
P.A., a Florida corporation, a/k/a The
Jacobs Law Group, Pablo A. Arriola,
individually, and Scott R. Shapiro,
individually,

           Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Segundo Toste ("Plaintiff" or "Toste") sues Defendants, The Beach Club at Fontainebleau Condominium Association, Inc., Russell S. Jacobs, P.A. a/k/a The Jacobs  Law Group, Pablo A. Arriola and Scott R. Shapiro, (collectively "Defendants"), seeking statutory and actual damages, and attorneys' fees and costs, and as grounds therefore states:

## JURISDICTION, VENUE AND PARTIES

1.      This Court has subject matter jurisdiction of this case under 15 U.S.C. § 1692k of the Fair Debt Collection Practices Act ("FDCPA") and 28 U.S.C. §§ 1331, 1337(a) and 1367.

2.      Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. §§ 1391(b) and (c).

3.      Plaintiff, Segundo Toste, is a natural person, over the age of eighteen, and is otherwise *sui juris*.

4.      Toste is a resident of Miami-Dade County, Florida, and owns the property located at 9375 Fontainebleau Boulevard, Unit L-410, Miami, FL 33172 (the "Property" or "Toste's Property").

5.      Toste is a consumer/debtor as defined in the applicable laws referenced herein.

6.      The Beach Club at Fontainebleau Park Condominium Association, Inc., is a Florida not-for-profit corporation, and a condominium association operating pursuant to Florida Statutes Chapter 718 et. seq. (the "Association").

7.      The Association's rights, duties, and obligations are set forth in, among other governing documents, the Declaration of Condominium for The Beach Club at Fontainebleau Park, a Condominium, as amended, recorded at Official Records Book 23399 Page 1649 of the Public Records of Miami-Dade County, Florida. ("Declaration").

8.      Defendant, Russell S. Jacobs, P.A. a/k/a The Jacobs Law Group ("the Firm"), is a Florida for profit corporation and law firm, acting on behalf of the Association, which engages in consumer debt collection on behalf of community associations throughout Florida, by among other actions, the filing of liens and foreclosure actions on past due assessments and other amounts allegedly owed to the Association.

9.      Defendant Pablo A. Arriola ("Arriola") is a natural person and a resident of Miami-Dade County, Florida, is over the age of eighteen, and is otherwise *sui juris*.

10.     Defendant Scott R. Shapiro ("Shapiro") is a natural person and a resident of Miami-Dade County, Florida, is over the age of eighteen, and is otherwise *sui juris*.

## GENERAL ALLEGATIONS

11.     The Firm is a debt collector as defined by the FDCPA.

12.     Arriola is a debt collector as defined by the FDCPA.

2

13.     Shapiro is a debt collector as defined by the FDCPA.

14.     Toste has been the object of collection activity arising from consumer debt.

15.     The Firm's, Arriola's, and Shapiro's actions were each authorized, ratified, consented to or acquiesced to by the Association.

### *The Firm*

16.     The principal purpose of the Firm's business is the collection of debts.

17.     Alternatively, the Firm, through Arriola, Shapiro and its other employees, regularly collects or attempts to collect debts owed or due, or asserted to be owed or due another, by consumers to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes.

18.     The Firm regularly uses the mails and other instrumentalities of interstate commerce in its collection or attempts to collect debts owed or due or asserted to be owed or due another by consumers, by for example, sending out letters such as that attached hereto as Exhibits "A" and "B".

19.     Specifically, the Firm advertises that it "…has five attorneys and a full staff ready to serve you in…collections and litigation." Exhibit "C".

20.     Additionally, the Firm advertises that it "….can provide in a program for your association:…collection of delinquent assessments through notices of intent to lien and claims of lien…preparing and sending legally required estoppel letters to potential purchasers for association to get paid past due maintenance fees and special assessments when owners transfer"…"pre-suit settlement negotiations and demand letters for law suits where the Association is…in the prosecution of an action." Exhibit "C".

21.     That the Firm, Arriola and Shapiro, regularly engage in the collection of past due assessments is also demonstrated, for example, by Claims of Lien filed against properties of the unit owners in the Association since 2017. A sampling of the Claims of Lien (seeking to recover well over a quarter million dollars, nearly $355,000, filed by the Firm, Jacobs and Shapiro on behalf of the Association in 2017 alone is attached at Exhibit "D".

22.     Nor are the Firm's, Arriola's, and Shapiro's collection efforts limited to only this Association. *See, e.g.*, Exhibit "E".

23.     The Firm has engaged in collection efforts on behalf of the Association since on or about March 31, 2016, by which time the Firm had already been successful in such efforts and had remitted collections from allegedly delinquent units.

### *The Firm, Arriola, Shapiro, and the Association*

24.     The Firm, Arriola, and Shapiro are the real or actual agents of the Association where the Association acknowledges that the Firm, Arriola, and Shapiro, respectively, are acting as its agents in the debt collection matters asserted against Toste.

25.     The Firm, Arriola, and Shapiro, respectively, undertook and accepted such undertaking by, among other things, Arriola and Shapiro's correspondence with Toste on behalf of the Firm using the Association's name in order to collect or attempt to collect on the debt allegedly owed to the Association, and the Association controlled the Firm's, Arriola's and Shapiro's day-to-day activities during the course of the agency.

26.     Alternatively, the Association held the Firm, Arriola and Shapiro out to the public as possessing sufficient authority to collect on the debts as defined herein, or knowingly permitted the Firm, Arriola and Shapiro to each act as having such authority. Toste, in dealing with the Firm,

Arriola and Shapiro knew of these facts, and acting in good faith, had reason to believe that the Firm, Arriola and Shapiro each possessed the necessary authority to so act.

27.     The Association created the appearance of an agency relationship between itself the Firm, Arriola and Shapiro, where, among other things, the Association corresponded with Toste through the Firm, Arriola and Shapiro, and recorded or caused to be recorded a Claim of Lien against Toste's Property. Toste relied on those representations and changed his position in reliance on those representations by, among other things, dealing with the Firm, Arriola and Shapiro directly instead of with the Association.

28.     The Association's voluntary actions placed the Firm, Arriola and Shapiro in such a situation that Toste, a person of ordinary prudence, conversant with business usages and the nature of the assessment collection business, was justified in presuming that the Firm, Arriola, and Shapiro each had the authority to act on the Association's behalf in collecting the debts as defined herein and therefore dealt with the Firm, Arriola and Shapiro.

29.     Where the Firm, Arriola and Shapiro were each acting as agents of the Association, whether under actual or apparent authority, the knowledge of each of them is imputed to the Association.

### *The Debt Sought Against Toste*

30.     At all times material hereto, Toste was the owner of the Property and a member of the Association.

31.     Toste's obligations as an owner and member of the Association are set forth in the Declaration.

32.     As an owner, Toste had the affirmative obligation under the Declaration, beginning at the time he became the owner of the Property, to timely pay maintenance assessments to the Association for the Property as set forth therein. *See* Exhibit "F" Section 14.1.

33.     Annual assessments are due in monthly installments on the first day of every month and are deemed past due after the tenth day of the month.

34.     Special assessments are due by the 24th day of the month.

35.     The Declaration dictates that "[a]ssessments and installments on them not paid when due bear interest from the date due until paid at the maximum interest rate permitted by law, and at the sole discretion of the Board of Administration, a late charge not to exceed the greater of Twenty Five dollars ($25.00) or five (5%) of each installment of the Assessment for each delinquent installment that the payment is late shall be due and payable." Exhibit "F" Section 14.2.

36.     All debts that the Firm, Arriola and Shapiro sought to collect from Toste referred to herein were for consumer debts in the form of condominium association maintenance assessments and other amounts as detailed below that Toste allegedly owed to the Association for the Property.

37.     There are two different sets of bookkeeping for Toste's account: one prepared by the Association and its bookkeeper, and another different one prepared by the Firm.

38.      The Association retained the Firm to collect the debt as described herein. Exhibits "A", "B" and "G".

39.     The Firm accepted and engaged in calculating the amounts owed on each unit in the Association, including Toste's Property, and maintaining those records.

40.     Once the amount owed by a particular unit was calculated, the Firm provides that information to the unit owner, either upon request by the owner, or by its own direct attempt to collect.

The History

41.     Toste, aware that his payments had fallen behind in 2017, reached out to the Association in late 2017, requesting a statement of his account reflecting the total balance and its components.

42.     Despite repeatedly visiting the Association office in person, he was consistently told that the information was not available. Toste continued to visit the Association office for the next several months, trying unsuccessfully to obtain information about his account.

43.     On or about March 1, 2018, during another in person attempt to obtain information about his account, the Board President, Katherine Castro ("Castro") was present in her office inside the Association office.

44.     Toste asked the Association representative at the front desk to tell Castro that he was willing to pay off the assessment balance of his account, if the Association would agree to remove all other charges.

45.     The Association representative went to Castro and presented Toste's offer.

46.     Toste could see Castro in her office and heard her agree to his terms. He thanked her for doing so and the Association representative then returned to the front desk and provided the balance of assessments due.

47.     Toste immediately issued two checks totaling the full balance of assessments (ten (10) months of regular assessments and ten (10) months of special assessments.

48.     The Association subsequently cashed both checks but, as Toste would later discover, did not return his account to a zero balance.

49.     Toste again fell behind in his payments to the Association and again visited the office over the next few months, repeatedly asking for information regarding his account so that he could make a payment.

50.     In June 2019, Toste, frustrated, angry and confused, again visited the Association office to yet again request the statements for his account so he could verify the amounts he was being charged, and indicated he was considering retaining counsel to get the information. He provided his email address and asked again that the information be sent to him as soon as possible.

51.      Despite receiving an email from the Association stating that his statement had been requested from accounting and that "[i]t can take some time" he never received a response to his request. Exhibit "I".

52.     Through June and July 2019, Toste continued to request the statement of his account in person and via email, but never received a response or the statement he had requested.

53.     In August 2019, Toste again visited the Association office asking for the statement of his account yet again. Toste was told by "Manolo" that the Association had no information about his account, and could do nothing because the account had been transferred to its attorneys for collection.

<u>September 16, 2019 Notice of Intent of Filing Claim of Lien</u>

54.     On September 16, 2019, the Firm and Arriola, on behalf of the Association, sent Toste a Notice of Intent of Filing Claim of Lien ("September 16, 2019 Notice of Intent of Filing Claim of Lien") in order to induce payment of a debt as described herein. Exhibit "A".

55.     In this communication, the Firm and Arriola are identified to Toste as representing the Association in this collection matter. *Id.*

56.     In addition to threatening to record a claim of lien on his home, this communication also threatened additional penalties or fees: "Please note that there are ongoing attorney's fees and charges as well as maintenance fees, late fees and accruing interest." "Accordingly, this letter shall serve as notice to you of the Association's intent to file a claim of lien against your Property no sooner than thirty days after the date on which this letter has been delivered to you unless you pay in full the amounts described above in the time required." *Id.*

57.     The Firm also attempted to induce payment by directing Toste to make payment to the Firm: "Please make check payable to: The Jacobs Law Group Trust Account." *Id.*

58.     Finally, the Firm stated in this communication: "THIS FIRM IS DEEMED A DEBT COLLECTOR, IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id*. (Emphasis in original.)

59.     In violation of Florida Statutes Chapter 718.121, the September 16, 2019 Notice of Intent of Filing Claim of Lien, for example, fails to state the due dates and amount of maintenance fees. This failure to comply with Fla. Stat. 718.121 made it impossible for Toste to verify the amount of delinquent assessments for which a lien is being threatened. Likewise, because the preceding information is missing, he could not determine whether the $725.00 in late fees is properly calculated, much less whether his payments were properly applied in the order required by Fla. Stat. 718.116. Moreover, because each of the two types of assessments has different due dates and grace periods, Toste was unable to verify whether he is improperly being charged late fees.

60.     Compounding these errors, the amounts sought in the September 16, 2019 Notice of Intent of Filing a Claim of Lien Toste later discovered these amounts were inconsistent with the amounts shown in the Statement dated July 29, 2020 (as discussed later herein and identified as the "Ledger"). For example, late fees of $725.00 are shown in the Notice of Intent of Filing of Lien and $525.00 in the Ledger for the period March 1, 2018, through September 16, 2019.

61.     The Ledger, which was subsequently provided by the Association on July 29, 2020 after Toste's repeated requests, reflects the historical information preceding this communication.

62.     The Firm and Arriola would have relied on that historical information in preparing the September 16, 2019 Notice of Intent of Filing a Claim of Lien, which reveals additional errors, among others: an unexplained beginning balance, finance charges repeatedly exceeding 18%, finance charges being charged before they are due, interest being charged on late fees and finance charges, and finance charges being charged on an entire month when special assessments are posted on the 17th.

63.     The Firm and Arriola were each responsible for verifying with the Association the amounts owed by Toste as well as the amounts the Firm would be seeking to collect from Toste before pursuing Toste for payment.

64.     The Association provided the Firm with the amounts due upon which the Firm relied on in preparing and executing the September 16, 2019 Notice of Intent of Filing a Claim of Lien, with the intent that the Firm collect those amounts.

65.     Alternatively, the Firm and Arriola determined the amounts which they relied on in preparing and executing the September 16, 2019 Notice of Intent of Filing a Claim of Lien.

66.     The Firm and Arriola knew what dates the debts were incurred on, what each debt was comprised of, and what interest and late fees they were attempting to collect.

67.    The Firm and Arriola wrongfully threatened to take adverse action against Toste via the September 16, 2019 Notice of Intent of Filing a Claim of Lien sent on the Association's behalf by asserting its intent to record a Claim of Lien on the Property based on the debt at issue as alleged herein.

68.    After reviewing the September 16, 2019 Notice of Intent of Filing a Claim of Lien, Toste was misled, confused, and entirely unsure of what amounts he owed and what those amounts were comprised of.

69.    That confusion would only grow with each future communication he was to receive from the Firm and the Association, including, ultimately the Ledger which confirmed the existence of accounting errors and discrepancies in the amounts being sought from him. Because of those errors and discrepancies, Toste has been misled as to the amounts he allegedly owes to the Association.

<u>November 5, 2019 Notice of Intent to Foreclose Claim of Lien</u>

70.    On November 5, 2019, the Firm, on behalf of the Association, sent Toste a Notice of Intent to Foreclose Claim of Lien ("November 5, 2019 Notice of Intent to Foreclose Claim of Lien"). Exhibit "B".

71.    This communication repeatedly threatened to foreclose a claim of lien on his home: "You are hereby on notice that the Association, pursuant to F.S. 718.116, intends to file a foreclosure action against the property address **9375 Fontainebleau Blvd. Unit L410, Miami, FL 33172** by foreclosing on the attached Claim of Lien recorded on **11/04/2019** in the Public Records O.R. Book **31676,** Page **590** of the Miami-Dade County, Florida….Unless the attached claim of lien is fully satisfied before thirty days from today in the amount set forth below plus any accrued

charges to date of payment, then the Association intends to commence a foreclosure action against the above-referenced property." Exhibit "B" (emphasis in original).

72.     This communication threatened additional penalties or fees: "All costs of any action and interest from this day forward will also be charged to your account." *Id.*

73.     In addition to the preceding statements, the Firm also attempted to induce payment by directing Toste to make payment to the Firm: "You must make check payable to **"The Jacobs Law Group Trust Account."** *Id.* (emphasis in original).

74.     In this communication, the Firm is identified to Toste as representing the Association in this collection matter.

75.     In violation of Florida Statutes Chapter 718.116, the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, for example, states Toste owes interest from March 2017. However, on May 11, 2017, Toste did not have any outstanding balance at all: he had a credit balance of $103.68, as later confirmed by the Ledger later provided. Exhibit "H".

76.     The repeated errors in the amounts being sought from him under threat of losing his home continued to mislead and confuse Toste as to the correct amount of any outstanding balance as well as to the consequences of paying anything other than the amounts being sought from him.

77.     The Firm was responsible for verifying with the Association the amounts owed by Toste as well as the amounts the Firm would be seeking to collect from Toste before pursuing Toste for payment.

78.     The Association provided the Firm with the amounts due upon which the Firm relied on in preparing and executing the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, with the intent that the Firm collect those amounts.

79.     Alternatively, the Firm determined the amounts which it relied on in preparing and executing the November 5, 2019 Notice of Intent to Foreclose Claim of Lien.

80.     The Firm knew what dates the debts were incurred on, what each debt was comprised of, and what interest and late fees it was attempting to collect.

81.     The Firm wrongfully threatened to take adverse action against Toste via the November 5, 2019 Notice of Intent to Foreclose Claim of Lien sent on the Association's behalf by asserting its intent to foreclose a Claim of Lien on the Property based on the debt at issue as alleged herein.

<u>November 4, 2019 Claim of Lien – attached to November 5, 2019 Notice of Intent to Foreclose Claim of Lien</u>

82.     On November 4, 2019, the Firm and Shapiro, acting on behalf of and as the agent of the Association, recorded or caused to be recorded in the public records of Miami-Dade County, Florida at Official Records Book 31676 at Page 590 a Claim of Lien reflecting "Regular and Special Assessments" totaling $6,712.09 ("Claim of Lien"). Exhibit "G".

83.     Arriola witnessed and notarized Shapiro's signature on the Claim of Lien. *Id.*

84.     The Claim of Lien threatened additional penalties or fees: "In addition, this Claim of Lien secures all unpaid assessments, interest, late fees, costs and reasonable attorney fees and costs which are due and which may accrue after the dates indicated above and subsequent to the date of this Claim of Lien." *Id.*

85.     The Firm and Shapiro are identified to Toste on the Claim of Lien as representing the Association in this collection matter.

86.     The Firm and Shapiro were responsible for verifying with the Association the amounts owed by Toste as well as the amounts the Firm and Shapiro would be seeking to collect from Toste before pursuing Toste for payment.

13

87.     The Association provided the Firm and Shapiro with the amounts due upon which the Firm and Shapiro relied on in preparing and executing the Claim of Lien, with the intent that the Firm and Shapiro collect those amounts.

88.     Alternatively, the Firm and Shapiro determined the amounts which they relied on in preparing and executing the Claim of Lien.

89.     The Firm and Shapiro knew what dates the debts were incurred on, what each debt was comprised of, and what interest they were attempting to collect.

90.     The Firm and Shapiro wrongfully threatened to take adverse action against Toste by recording or causing to be recorded the Claim of Lien based on the debt at issue as alleged herein.

91.      Toste again reviewed his records, but without the ledger he had repeatedly requested, was unable to verify the amounts being sought from him.

92.     Instead, after the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, Toste simply grew more confused as to whether he was required to pay amounts he did not believe he owed and was misled as to the consequences of paying any amount other than the amounts sought in this communication.

93.     Toste then called the Firm which had sent him the two letters and recorded the Claim of Lien and again requested a statement containing a breakdown of the ever-increasing charges.

94.     The Firm refused to provide that information and instead insisted on Toste entering into a payment plan.

95.     When Toste refused to enter into a payment plan because he disputed the amounts sought and without being provided the account information he had been requesting for over a year,

instead of providing that information and verifying the debt, the Firm representative advised him that if he did not pay the amounts the Firm said he owed, he would lose his home.

96.     On March 3, 2020, Toste received an email from the Association, asking payments be sent to the Association directly but making no changes whatsoever to the amounts that were being sought against him. Exhibit "J".

97.     At a complete loss, confused, and misled as to whether he owed the amounts claimed by Defendants, and misled as to the amounts and consequences of paying anything other than the amounts asserted by Defendants in the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, Toste still remained entirely unable to obtain any information about his account.

98.     In fear of possibly losing his home over amounts he may or may not have owed, Toste sought legal counsel and on July 28, 2020, once more requested his account statement from the Association.

99.     After over a year of attempting to obtain a ledger, the Association finally provided a ledger to Toste on July 29, 2020 (the "Ledger"). Exhibit "H".

100.    Toste, through counsel, also retained an expert witness to review all financial records available, including the newly received Ledger, in order to attempt to decipher and verify the amounts Defendants claimed were due.

101.    As a consequence of, and in response to having received the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, and the conflicting Ledger, Toste expended time,  money and effort, retaining counsel and working with their expert witness, in an effort to

recreate his accounting history as far back as 2014 in order to identify the Defendants' accounting errors, by obtaining personal bank statements, and copies of checks.

>    July 29, 2020 Ledger

102.    The Ledger, ostensibly reflecting the amounts relied on by Defendants in determining the amounts to demand from Toste in the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, revealed discrepancies, errors and impermissible charges.

103.    That Ledger confirmed that Toste's concerns were well founded and that, in fact, he had been misled by the Defendants as to the amounts he owed. Among other misrepresentations made by Defendants, the Ledger revealed:

>    a.    Toste had a zero balance on September 29, 2014. With no intervening transactions, two balance forward entries of unknown origin were posted on October 31, 2014. As a result, subsequent interest calculations and the order of application of future payments cannot be verified.
>
>    b.    The interest demanded on January 21, 2015, exceeds 18 percent (18%). A finance charge of $25.00 was posted on a balance of $1,235.63, resulting in an interest rate being charged of 23.82%. This scenario occurs repeatedly throughout the Ledger.
>
>    c.    The January 21, 2015 finance charge charged interest for an entire month causing interest to be charged that is not yet due.
>
>    d.    During March 2017, two $25.00 finance charges plus an additional charge of "Late Fee or Finance Charges on Overdue Balance" are posted to the Ledger. As a result, the interest rate being charged is unconscionable. For example, the March 2017 entries show an assessment balance of $346.30 and finance charges of $55.56. This equates to an interest rate in excess of 250%. Although the interest rate charged changes each month, this scenario is repeated from March 2017 through June 2018.
>
>    e.    The interest calculation appears to overstate the actual amount of the interest due because interest is being charged on finance charges or late fees. For example, the March 30, 2017 finance charge of $5.56 appears to be based on $346.30 in assessments and special assessments plus a finance charge of $25.00.

    f.    The March 30, 2017 finance charge of $5.56 is overstated because interest on past due special assessments is charged for an entire month, even though special assessments are posted to the ledger on March 15, 2017.

    g.    The interest calculation is incorrect because the time period used is incorrect. Interest calculations appearing on the Ledger appear to be using a fixed time period for each month. For example, the April 20, 2015, and the May 19, 2015, finance charges are both $25.00. Since April has 30 days and May has 31 days, this is illogical.

    h.    The total interest demanded is incorrect.

    i.    The total amount demanded is incorrect.

104.    Additionally, pursuant to the Ledger provided by the Association, the total balances on September 16, 2019 ($8,660.97), and November 5, 2019 ($10,247.77) are less than those demanded from Toste in the September 16, 2019 Notice of Intent of Filing a Claim of Lien ($8,688.43) and November 5, 2019 Notice of Intent to Foreclose Claim of Lien ($10,429.97).

105.    Moreover, the Claim of Lien, recorded just the day before the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, reflected a total due of $9,984.72.

106.    As such, had Toste paid the amounts sought in the September 16, 2019 Notice of Intent of Filing a Claim of Lien ($8,688.43) and November 5, 2019 Notice of Intent to Foreclose Claim of Lien ($10,429.97), he would have been induced by Defendants into paying amounts he did not owe.

107.    The discrepancies between the September 16, 2019 Notice of Intent of Filing Claim of Lien, the November 5, 2019 Notice of Filing of Claim of Lien, the Claim of Lien, and the Ledger misled Toste and made it impossible for him to know the amount which he allegedly owed to the Association at any given point in time, and what those amounts were comprised of, particularly where the amounts were inconsistent, and late fees and interest were improperly charged.

108.    Toste requires the correct amount of the debt sought against him, at a minimum, in order to determine - if those amounts are correct - what amounts he is required to pay to avoid foreclosure, or to redeem the Property before the foreclosure sale.

109.    Toste did not understand and was misled by Defendants' actions as to, among other things, why erroneous amounts were being sought from him, why the Defendants refused to correct their account records, why the amounts sought by the Association were different from those sought by the Firm, Arriola and Shapiro, why a Claim of Lien had been recorded against his Property, and what the implications of the Claim of Lien was in terms of the amounts owed, what amounts he was required to pay and whether he should pay the amounts demanded, and the effect of failing to pay disputed amounts on his ownership of the Property.

110.    Because of his uncertainty as to whether he would have to pay the full amount claimed in the September 16, 2019 Notice of Intent of Filing a Claim of Lien, or the amount in November 4, 2019 Claim of Lien, or the amount in the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, or the Ledger provided by the Association at some point in the future, or whether he had to pay such amounts in order to avoid losing his home in foreclosure, Toste decided to retain counsel.

111.    As such, Toste was also at risk of being misled by the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, and the Ledger into paying amounts he did not owe in order to avoid losing his home in foreclosure.

112.    As a consequence of, and in response to the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien,  Toste has expended time, money and effort, by retaining and

working with counsel and their expert witness, researching and gathering documents and trying to identify the Defendants' accounting errors, by among other things, determining whether and when payments were being posted and whether late fees and finance charges were incorrectly assessed.

113.    The Firm, Arriola, Shapiro, and the Association also created a real risk of harm by clouding the title to the Property when they recorded or caused to be recorded the November 4, 2019 Claim of Lien based on incorrect amounts.

114.    Toste was therefore prohibited or deterred from transferring the Property or obtaining any additional lien due to Defendants' actions.

115.    Toste has a statutory right to receive information from a debt collector that does not contain false representations as to the character, amount or legal status of the debt at issue.

116.    The FDCPA requires the Firm, Arriola, and Shapiro as debt collectors to accurately disclose "the character, amount or legal status of any debt." 28 U.S.C. §1692e(2)(A).

117.    The Firm, Arriola, Shapiro and the Association mischaracterized and falsely represented the character, amount or legal status of the alleged debt owed by Toste.

118.    The Firm, Arriola, and Shapiro knew the legal right to collect the amounts sought in the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien did not exist where they had either prepared the Ledger, or ratified, acquiesced or agreed to the amounts the Association claimed were owed, yet sought inconsistent and incorrect amounts in the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 4, 2019 Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien.

119.    Toste has not at any time acknowledged the validity of the debt referred to herein, and instead has repeatedly disputed the amounts sought from them.

120.    Within one year prior to the filing of this action, Defendants have been attempting to collect the alleged debts from Toste.

121.    The Firm, Arriola and Shapiro have each intentionally violated, by act or omission, a provision or provisions of the FDCPA.

122.    The debts were in default at the time of the Firm's, Arriola's and Shapiro's respective collection efforts, or were treated as being in default by the Firm, Arriola and Shapiro.

123.    Toste has been injured where, as a result of the Association's, the Firm's, Arriola's and Shapiro's' respective actions as described herein, Toste has expended time, money and effort to, among other things, determine, verify and dispute the amounts being sought against him by retaining and working with counsel and their expert witness, researching and gathering documents and trying to identify the accounting errors, reviewing all financial records available, and, whether and when payments were being posted and whether late fees and finance charges were incorrectly assessed.

124.    Toste has also been injured a result of the Association's, the Firm's, Arriola's and Shapiro's' respective actions where, among other things, he has suffered emotional distress, anger, anxiety, fear, confusion, frustration, humiliation and embarrassment as a result of each of their actions, and has also suffered a real risk of harm resulting from each of the defendants' actions as described herein.

125.    All conditions precedent to this action have been performed, occurred, or been waived.

126.    Toste has retained the undersigned counsel in this matter and is obligated to pay them reasonable attorneys fees' and costs.

### COUNT I – FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
**(against the Firm and Arriola)**

**September 16, 2019 Notice of Intent of Filing a Claim of Lien**

127.    Toste incorporates by reference the allegations of the preceding paragraphs 1 through 69 and 82 through 126, and all exhibits attached hereto, as if the same were fully set forth herein.

128.    The Firm and Arriola each violated 15 U.S.C § 1692e by, among other things, using a false, deceptive, or misleading representation or means in connection with the collection of a debt, threatening to record a Claim of Lien in a communication which was not only legally insufficient under Florida law but also sought erroneous amounts where it sought interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, improperly charged interest on finance charges, improperly charged interest on late fees, thereby ultimately seeking amounts which are impermissible under Florida law and the Declaration.

129.    The Firm and Arriola each violated 15 U.S.C § 1692e(2)(A) where, among other things, they falsely represented the character, amount, or legal status of debt, where, for example, they sought erroneous amounts where it sought interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, improperly charging interest on finance charges, improperly charging interest on late fees, thereby ultimately seeking amounts which are impermissible under Florida law and the Declaration.

130.    The Firm and Arriola each violated 15 U.S.C. § 1692e(5) by, among other things, threatening to take any action that cannot legally be taken or that is not intended to be taken, by among other things, seeking interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, seeking amounts which are impermissible under Florida law.

131.     The Firm and Arriola each violated 15 U.S.C. § 1692e(10) by using a deceptive means to collect or attempt to collect a debt where, for example, they misled and confused Toste as to the composition of the amounts sought where the Ledger later provided to Toste and upon which the September 16, 2019 Notice of Intent of Filing a Claim of Lien were based reflected inconsistent amounts, and improperly charged late fees and interest, improperly charged interest on finance charges, improperly charged interest on late fees, thereby seeking amounts which are impermissible under Florida law and the Declaration.

132.     The Firm and Arriola each violated 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1) by using an unfair or unconscionable means to collect or attempt to collect a debt,  by seeking amounts not expressly authorized by the agreement creating the debt or permitted by law, such as, among other things, late fees and interest exceeding the amount permissible by Florida law and the Declaration.

133.     Toste has been injured by his justifiable reliance upon the Firm's and Arriola's misrepresentations where, as a result of those misrepresentations, Toste has expended time, money and effort to, among other things, determine, verify and dispute the amounts being sought against him by retaining and working with counsel and their expert witness, researching and gathering documents and trying to identify the accounting errors, reviewing all financial records available, and, whether and when payments were being posted and whether late fees and finance charges were incorrectly assessed.

134.     Toste has been injured by his justifiable reliance upon the Firm's and Arriola's misrepresentations where, among other things, he has suffered emotional distress, anger, anxiety, fear, confusion, frustration, humiliation and embarrassment as a result of each of their actions, and has also suffered a real risk of harm by the Firm and Arriola where the Firm and Arriola contributed

to the recording of the Claim of Lien recorded by the Firm and Shapiro against his Property, which could lead to foreclosure proceedings.

135.     As set forth herein, the Firm's and Arriola's representations were misleading and unfair, Toste relied on and was misled by those representations and incurred damages as a result.

WHEREFORE, Plaintiff, Segundo Toste, requests a judgment be entered for himself and against Defendants Russell S. Jacobs, a/k/a The Jacobs Law Group, Pablo A. Arriola, jointly and severally, as follows:

    A.     Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

    B.     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

    Such other and further relief as the Court deems just and equitable.

### COUNT II – FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
**(Toste against the Firm)**
**November 5, 2019 Notice of Intent to Foreclose Claim of Lien**

136.     Toste incorporates by reference the allegations of the preceding paragraphs 1 through 70 and 82 through 126, and all exhibits attached hereto, as if the same were fully set forth herein.

137.     The Firm violated 15 U.S.C § 1692e by, among other things, using a false, deceptive, or misleading representation or means in connection with the collection of a debt, threatening to foreclose a Claim of Lien in a communication which was not only legally insufficient under Florida law but also sought erroneous amounts where it sought interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, improperly charging interest on finance charges, improperly charging interest on late fees, thereby ultimately seeking amounts which are impermissible under Florida law and the Declaration.

138.     The Firm violated 15 U.S.C § 1692e(2)(A) where, among other things, they falsely represented the character, amount, or legal status of debt, where, for example, they sought erroneous amounts where it sought interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, improperly charging interest on finance charges, improperly charging interest on late fees, thereby ultimately seeking amounts which are impermissible under Florida law and the Declaration.

139.     The Firm violated 15 U.S.C. § 1692e(5) by, among other things, threatening to take any action that cannot legally be taken or that is not intended to be taken, by among other things, seeking interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, improperly charging interest on finance charges, improperly charging interest on late fees, thereby seeking amounts which are impermissible under Florida law and the Declaration.

140.     The Firm violated 15 U.S.C. § 1692e(10) by using a deceptive means to collect or attempt to collect a debt where, for example, they misled and confused Toste as to the composition of the amounts sought where the Ledger later provided to Toste and upon which the September 16, 2019 Notice of Intent of Filing a Claim of Lien were based reflected inconsistent amounts, and improperly charged late fees and interest, improperly charged interest on finance charges, improperly charged interest on late fees, thereby seeking amounts which are impermissible under Florida law and the Declaration.

141.     The Firm violated 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1) by using an unfair or unconscionable means to collect or attempt to collect a debt, by seeking amounts not expressly authorized by the agreement creating the debt or permitted by law, such as, among other things, late fees and interest exceeding the amount permissible by Florida law and the Declaration.

24

142.     Toste has been injured by his justifiable reliance upon the Firm's misrepresentations where, as a result of those misrepresentations, Toste has expended time, money and effort to, among other things, determine, verify and dispute the amounts being sought against him by retaining and working with counsel and their expert witness, researching and gathering documents and trying to identify the accounting errors, reviewing all financial records available, and, whether and when payments were being posted and whether late fees and finance charges were incorrectly assessed.

143.     Toste has been injured by his justifiable reliance upon the Firm's misrepresentations where, among other things, he has suffered emotional distress, anger, anxiety, fear, confusion, frustration, humiliation and embarrassment as a result of the Firm's actions, and has also suffered a real risk of harm created by the Firm where the Firm contributed to the recording of the Claim of Lien recorded by the Firm and Shapiro against his Property, and threatened to foreclose the Claim of Lien recorded by the Firm and Shapiro against his Property.

144.     As set forth herein, the Firm's representations were misleading and unfair, Toste relied on and was misled by those representations and incurred damages as a result.

WHEREFORE, Plaintiff, Segundo Toste, requests a judgment be entered for himself and against Defendant Russell S. Jacobs, a/k/a The Jacobs Law Group, as follows:

A.     Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

B.     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

Such other and further relief as the Court deems just and equitable.

### COUNT III – FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
**(Toste against the Firm and Shapiro)**
**Claim of Lien**

145.     Toste incorporates by reference the allegations of the preceding paragraphs 1 through 126, and all exhibits attached hereto, as if the same were fully set forth herein.

146.     The Firm and Shapiro each violated 15 U.S.C § 1692c(b) by, among other things, caused to be filed or posted in the public records of Miami-Dade County, Florida a Claim of Lien stating that Toste was indebted to the Association in the amount of $9,984.72. Exhibit "G".

147.     Toste did not give prior consent to the Firm or Shapiro to communicate with any person other than himself regarding the alleged debt.

148.     No court has given express permission to the Firm or Shapiro to communicate with any person other than himself regarding the alleged debt.

149.     No judgment had been entered against Toste in relation to the alleged debt at the time the Claim of Lien was recorded, nor has any such judgment been entered to date.

150.     Notwithstanding, the Firm and Shapiro communicated with third parties regarding Toste's alleged debt to the Association by posting the Claim of Lien in the public records of Miami-Dade County, Florida for all to see.

151.     Toste has been injured by his justifiable reliance upon the Firm's and Shapiro's misrepresentations where, as a result of those misrepresentations, Toste has expended time, money and effort to, among other things, determine, verify and dispute the amounts being sought against him by retaining and working with counsel and their expert witness, researching and gathering documents and trying to identify the accounting errors, reviewing all financial records available, and, whether and when payments were being posted and whether late fees and finance charges were incorrectly assessed.

152.     Toste has been injured by his justifiable reliance upon the Firm's and Shapiro's misrepresentations where, among other things, he has suffered emotional distress, anger, anxiety,

fear, confusion, frustration, humiliation and embarrassment as a result of each of their actions, and has also suffered a real risk of harm created by the Firm and Shapiro where the Firm threatened to foreclose the Claim of Lien recorded by the Firm and Shapiro against his Property.

153.    As set forth herein, the Firm's and Shapiro's representations were misleading and unfair, Toste relied on and was misled by those representations and incurred damages as a result.

WHEREFORE, Plaintiff, Segundo Toste, requests a judgment be entered for himself and against Defendants Russell S. Jacobs, a/k/a The Jacobs Law Group and Scott R. Shapiro, as follows:

A.    Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

B.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

Such other and further relief as the Court deems just and equitable.

### COUNT IV – NEGLIGENT MISREPRESENTATION
**(Toste against the Association, the Firm, Arriola and Shapiro)**

154.    Toste incorporates by reference the allegations of the preceding paragraphs 1 through 126 and all exhibits attached hereto, as if the same were fully set forth herein.

155.    The Association, the Firm, Arriola and Shapiro each misrepresented to Toste the amounts he owed to the Association by, among other things: improperly charging interest charges exceeding the amount permissible by Florida law and the Declaration, improperly charging late fees, improperly charging interest on finance charges, improperly charging interest on late fees, thereby ultimately seeking amounts which are impermissible under Florida law and the Declaration.

156.    The total amount, and its composition, Toste is alleged to owe the Association is a material fact where Toste has the affirmative obligation under the Declaration, beginning at the time he became the owner of the Property, to timely pay maintenance assessments to the

Association for the Property as set forth therein, failing which Toste can be subject to additional charges. Exhibit "F."

157.    The Association knew or should have known the representations were false where it provided the Firm, Arriola and Shapiro with the amounts due upon which the Firm, Arriola and Shapiro relied on in preparing, executing and issuing to Toste the September 16, 2019 Notice of Intent of Filing a Claim of Lien, and the November 5, 2019 Notice of Intent to Foreclose Claim of Lien, and in recording the November 4, 2019 Claim of Lien, with the intent that the Firm, Arriola and Shapiro collect those amounts, yet the Firm, Arriola and Shapiro attempted to collect different amounts on behalf of the Association.

158.    The amounts provided by the Association to the Firm, Arriola and Shapiro for collection as agents of the Association misrepresented the amounts owed by Toste to the Association by, among other errors, an unexplained beginning balance, finance charges repeatedly exceeding 18%, finance charges being charged before they are due, interest being charged on late fees and finance charges, and finance charges being charged on an entire month when special assessments are posted on the 17th.

159.    Additionally, the Association, the Firm, Arriola and Shapiro each knew or should have known the representations were false where they each calculated the amounts due based on the Association's historical records as reflected in the Ledger, which contained the errors described herein. The two calculations resulted in different amounts owed, both of which contained amounts which were erroneous and impermissible under Florida law.

160.    The Association's historical records, and the re-calculation of the amounts owed conducted by the Firm, were relied upon by the Firm, Arriola and Shapiro as described hereafter in preparing, executing and issuing the following communications to Toste: the Firm's and

Arriola's September 16, 2019 Notice of Intent of Filing a Claim of Lien, the Firm's November 5, 2019 Notice of Intent to Foreclose Claim of Lien, and the Firm's and Shapiro's, November 4, 2019 Claim of Lien.

161.    The Firm's and Arriola's September 16, 2019 Notice of Intent of Filing a Claim of Lien, the Firm's November 5, 2019 Notice of Intent to Foreclose Claim of Lien, and the Firm's and Shapiro's, November 4, 2019 Claim of Lien were issued by the Firm, Arriola and Shapiro acting as agents of the Association, with the intent of collecting those amounts.

162.    The Association was aware of and authorized, ratified, consented to or acquiesced to the Firm's, Arriola's and Shapiro's actions in calculating the amounts due and collecting or attempting to collect those amounts from Toste via the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 5, 2019 Notice of Intent to Foreclose Claim of Lien and the November 4, 2019 Claim of Lien.

163.    The Association, the Firm, Arriola and Shapiro each intended the misrepresentations to induce Toste to act on them where they expected Toste to pay the amounts they claimed were owed.

164.    Toste justifiably relied on the Association's, the Firm's, Arriola's and Shapiro's representations where the Association has the obligation under Florida law to keep accurate records of all amounts charged to and paid on Toste's account, and again, under Florida law, must provide that information to Toste as unit owner upon request, and the Firm, Arriola and Shapiro held themselves out as acting as acting on behalf of the Association via the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 5, 2019 Notice of Intent to Foreclose Claim of Lien and the November 4, 2019 Claim of Lien, and during his communications with the

Association in August 2019 and with the Firm following his receipt of the November 5, 2019 Notice of Intent to Foreclose Claim of Lien.

165.    By sending the September 16, 2019 Notice of Intent of Filing a Claim of Lien, the November 5, 2019 Notice of Intent to Foreclose Claim of Lien and recording the November 4, 2019 Claim of Lien attempting to collect erroneous and impermissible amounts as described herein, the Association through the Firm, Arriola and Shapiro, were each able to increase the amounts they would ultimately recover from Toste: the Association would receive increased interest and late fees, while the Firm, Arriola and Shapiro would receive increased attorneys' fees and costs. Simultaneously, by seeking such erroneous and impermissible amounts, the Association, the Firm, Arriola and Shapiro increased the likelihood of Toste being unable to pay such amounts.

166.    Toste has been injured by his justifiable reliance upon the Association's, the Firm's Arriola's and Shapiro's misrepresentations where, as a result of those misrepresentations, Toste has expended time, money and effort to, among other things, determine, verify and dispute the amounts being sought against him by retaining and working with counsel and their expert witness, researching and gathering documents and trying to identify the accounting errors, reviewing all financial records available, and, whether and when payments were being posted and whether late fees and finance charges were incorrectly assessed.

167.    Toste has been injured by his justifiable reliance upon the Association's, the Firm's Arriola's and Shapiro's misrepresentations where, among other things, he has suffered emotional distress, anger, anxiety, fear, confusion, frustration, humiliation and embarrassment as a result of each of their actions, and has also suffered a real risk of harm created by the Association, the Firm, Arriola and Shapiro where the Association, the Firm, Arriola and Shapiro recorded, caused or

permitted to be recorded, the Claim of Lien which the Association, the Firm, Arriola and Shapiro seek to foreclose.

168.    As set forth herein, the Association's, the Firm's Arriola's and Shapiro's representations were misleading and unfair, Toste relied on and was misled by those representations and incurred damages as a result.

WHEREFORE, Plaintiff, Segundo Toste, demands judgment in his favor and against Defendants, The Beach Club at Fontainebleau Condominium Association, Inc., Russell S. Jacobs, a/k/a The Jacobs Law Group, Pablo A. Arriola and Scott R. Shapiro for compensatory damages, interest, and attorneys' fees and costs pursuant to applicable law, and any further relief this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted,

By:   /s/ Thais Hernandez          
Thais Hernandez, Esq.
Florida Bar No. 180998
The Law Firm of
Thais Hernandez, Esq.
*Counsel for Plaintiff*
8004 N.W. 154 Street #414
Miami Lakes, Florida  33016
Tel:  786.923.0850
Fax:  305.570.2192
Email: thernandezlaw@bellsouth.net


By:   /s/ Anthony Dieguez          
Anthony Dieguez, Esq.
Florida Bar No. 155409
anthony@dieguezlaw.com
Rebekah E. Guerrero, Esq.
Florida Bar No. 1002231
rebekah@dieguezlaw.com

By:   /s/ Alejandro Vilarello
Alejandro Vilarello, Esq.
Florida Bar No. 358177
AVLaw@Vilarello.com
Alejandro Vilarello, P.A.
*Co-counsel for Plaintiff*
16400 NW 59th Avenue, 2nd Fl.
Miami Lakes, FL 33014
Phone:    (305) 827-5665 x: 148
E-Fax.    (786) 429-0957
Cell:      (305) 299-5550

Joshua Dieguez, Esq
Florida Bar No. 1003235
josh@dieguezlaw.com
Dieguez & Associates, PLLC
*Co-Counsel for Plaintiff*
7950 N.W. 155th Street, Suite 207
Miami Lakes, Florida 33016
Telephone: 305-556-4106
Fax: 305-368-3902

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served all counsel of record on the below Service List.

By: __/s/ Thais Hernandez____
Thais Hernandez, Esq.
Florida Bar No. 180998
The Law Firm of
Thais Hernandez, Esq.
*Counsel for Plaintiff*
8004 N.W. 154 Street #414
Miami Lakes, Florida  33016
E-mail: thernandezlaw@bellsouth.net
Tel:  786.923.0850
Fax:  305.570.2192

### SERVICE LIST

| | |
|---|---|
| Thais Hernandez, Esq.<br>Florida Bar No. 180998<br>The Law Firm of<br>Thais Hernandez, Esq.<br>*Counsel for Plaintiff*<br>8004 N.W. 154 Street #414<br>Miami Lakes, Florida  33016<br>Tel:  786.923.0850<br>Fax:  305.570.2192<br>Email: thernandezlaw@bellsouth.net | Alejandro Vilarello, Esq.<br>Florida Bar No. 358177<br>Alejandro Vilarello, P.A.<br>*Cunsel for Plaintiff*<br>16400 NW 59th Avenue, 2nd Fl.<br>Miami Lakes, FL 33014<br>Phone:    (305) 827-5665 x: 148<br>E-Fax.    (786) 429-0957<br>Cell:      (305) 299-5550<br>Email: AVLaw@Vilarello.com |
| Anthony Dieguez, Esq.<br>Florida Bar Number: 155409<br>Email: anthony@dieguezlaw.com | Dale T. Golden, Esq.<br>Florida Bar No.: 0094080<br>dgolden@gsgfirm.com |

| | |
|---|---|
| DIEGUEZ & ASSOCIATES, PLLC.<br>7950 NW 155 Street, Suite 207<br>Miami Lakes, FL 33016<br>Telephone: (305) 556-4106<br>Fax: (305) 362-3902<br>*Attorneys for Plaintiff Segundo Toste* | Joseph C. Proulx, Esq.<br>Florida Bar No.: 0056830<br>jproulx@gsgfirm.com<br>GOLDEN SCAZ GAGAIN, PLLC<br>1135 Marbella Plaza Drive<br>Tampa, Florida 33619<br>Phone: (813) 251-5500<br>Fax: (813) 251-3675<br>*Attorneys for Defendant Russell S. Jacobs, P.A., Defendant Scott R. Shapiro, and Defendant Pablo A. Arriola* |
| Douglas J. Jeffrey, Esq.<br>Florida Bar No.: 149527<br>dj@jeffreylawfirm.com<br>Gail M. Walsh, Esq.<br>Florida Bar No.: 1010154<br>LAW OFFICES OF DOUGLAS J. JEFFREY, P.A.<br>6625 Miami Lakes Drive, Suite 365<br>Miami Lakes, Florida 33014<br>Phone: (305) 858-4744<br>Fax: (305) 8284718<br>*Attorneys for Defendant The Beach Club at Fontainebleau Condominium Association, Inc.* | |