UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI – CIVIL DIVISION
CASE NO. 1:20-cv-23771-KMM

Segundo Toste, individually,

                Plaintiff,

v.

The Beach Club at Fontainebleau Condominium
Association, Inc., a Florida corporation, Russell
S. Jacobs, P.A., a Florida corporation, a/k/a The
Jacobs Law Group, Pablo A. Arriola,
individually, and Scott R. Shapiro, individually,

                Defendants.

_____/

## PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO §1927 AND THE COURT'S INHERENT POWERS

Plaintiff, Segundo Toste ("Toste"), pursuant to 28 U.S.C. §1927 and his invocation of the Court's inherent powers to impose sanctions, and in compliance with Local Rule 7.3, hereby files this Motion for Sanctions Pursuant to § 1927 and the Court's Inherent Powers against Defendants, Russell S. Jacobs, P.A. (the "Firm"), Pablo A. Arriola ("Arriola"), Scott R. Shapiro ("Shapiro") (collectively "Defendants"), Russell S. Jacobs, individually ("Jacobs"), Dale Golden ("Golden"), and Golden Scaz & Gagain, P.A. ("Golden Firm") for bad faith litigation conduct. In support thereof, Toste states as follows:

### INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants and their counsel have deliberately rendered a farce the rules of discovery and procedure, and made a mockery of this Court's docket. First, they raised the debt collector defense for the first time at summary judgment after being sanctioned twice for that tactic in this district, effectively scoffing at the prior sanctions. That action forced this Court to continue trial, and the

Court sanctioned the Firm, Arriola, and Shapiro, finding Toste was entitled to his attorneys' fees in connection with his Motion to Strike Defendants' Declarations and for Sanctions [DE 95] and Defendants' Motion for Summary Judgment [DE 78]. DE 109.

Defendants next raised the ante in what could be the ultimate display of gamesmanship when they intentionally withheld a standing challenge to secure dismissal of the case on the eve of trial, despite clearly alleged facts supporting Toste's standing from the day they were served with the Amended Complaint on January 8, 2021. That deliberate concealment and retention of a defense – which could have been raised as early as January 14, 2021 when Defendants first raised their affirmative defenses – confirmed Defendants' and their counsel's intentional disregard for the parties' and this Court's resources and time.

Now, their post-dismissal Rule 11 motions, based on the *undisputed* facts of the Amended Complaint continue their intentional waste of judicial resources, time, and effort.

The deliberate squandering of resources and disrespect for the Court's docket has characterized Defendants' and their counsel's approach to this litigation from day one.[1] That they would so strain the already thin resources of the Court is incomprehensible. Without question, Defendants' and their counsel's sharp practices are vexatious and have unreasonably multiplied the proceedings, providing a solid foundation for sanctions under 28 U.S.C. §1927.

Two factors make Defendants' and their counsel's actions particularly reprehensible. The first is that Jacobs (the corporate representative of the Firm), Arriola, and Shapiro are all attorneys, charged with duties of complete candor and primary loyalty to the courts before which they practice.  The second is that Defendants' counsel, Golden and the Golden Firm, are highly

---

[1] A chronology of the events at issue during the litigation is attached as Exhibit "A" for ease of reference.

2

respected, well-seasoned FDCPA defense attorneys. They have litigated countless FDCPA and consumer collection cases, and significantly, have been at the forefront raising standing challenges based on *Trichell* and its progeny.[2] These are not newly minted attorneys who stumbled onto the standing defense at the last moment.

   For these reasons, Toste seeks sanctions against the Firm, Jacobs, Arriola, Shapiro, Golden and the Golden Firm, personally, jointly and severally, in the form of his attorneys' fees and costs incurred from the date of service of the Amended Complaint on each defendant, which on its face provided them with all of the facts necessary to raise the standing challenge and the undisputed facts to challenge Count III.[3] Toste also seeks the additional fees he has incurred in litigating the fee issue raised in the instant motion.[4]

## ARGUMENT AND MEMORANDUM OF LAW

### I.   Attorneys' Fees and Costs are Properly Awarded to Toste Under 28 U.S.C. § 1927.

   Section 1927 provides:

   Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[2] *Ramones v. Experion Information Solutions, LLC*, Civil Action No. 19-62949-Civ-Scola, 2021 WL 4050874 at *1 (S.D. Fla. Sept. 3, 2021); *Gartrell v. J.J. Marshall & Assoc., Inc.*, Case No. 3:19-cv-442-J-32JBT, 2021 WL 1329147 at *1 (M.D. Fla. Jan. 28, 2021); *Mraz v. I.C. Sys., Inc.*, Case No.: 2:18-cv-FtM-38NPM, 2020 WL 7125629 at *1 (M.D. Fla. Dec. 4, 2020); *Mraz v. I.C. Sys., Inc.*, Case No. 2:18-cv-254-FtM-38NPM, 2020 WL 5876947 at *1 (M.D. Fla. Oct. 2, 2020).

[3] Toste is not seeking a double recovery of the fees awarded as a sanction related to Defendants' untimely raising of the debt collector defense. Rather, Toste discusses the debt collector issue in the larger context of demonstrating how Defendants' "gotcha tactics" unreasonably and vexatiously multiplied the proceedings.

[4] The Eleventh Circuit authorizes this type of supplemental "fees-on-fees" request. *Norelus v. Denny's Inc.*, 628 F.3d 1270. 1301 (11th Cir. 2010).

This District has recognized that "[s]Section 1927's purpose is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them." *Olguin v. Florida's Ultimate Heavy Hauling, Inc.,* Case No., 17-67156-CIV-COOKE/GOODMAN, 2019 WL 3426539 at & (S.D. Fla. June 5, 2019) (citations omitted).

"To impose sanctions under this statute: (1) the attorney must engage in unreasonable and vexatious conduct; (2) that conduct must multiply the proceedings; and (3) the amount of the sanction must bear a 'financial nexus to the excess proceedings.' …However, the statute does not operate as a catch-all provision for sanctioning any objectionable conduct by counsel….There must be a connection between counsel's objectionable conduct and the multiplication of proceedings that would not have occurred otherwise." *Id*.

The test for "unreasonable and vexatious" conduct is more than mere negligence. "An attorney "unreasonably and vexatiously" multiplies proceedings within the meaning of § 1927 "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted). Such bad faith requires more than negligent conduct or lack of merit. *Id*. at 1241-42.

*Reasonableness*

The bad faith standard for imposing sanctions under § 1927 turns on the attorney's objective conduct as compared to how a reasonable attorney would have acted under the circumstances. *Norelus*, 628 F.3d at 1282. Objectively reckless conduct is sufficient to justify sanctions under § 1927 even if the attorney does not act knowingly and malevolently. *Id*. at 1291.

*Vexatious*

 Courts have given the term "vexatious" its ordinary meaning — "lacking justification and intended to harass" or "without reasonable or probable cause or excuse." *Torres v. City of Orlando*,

264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003) (quoting *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1312 (M.D. Fla. 2002)).[5]

*Multiplication of Proceedings*

"[M]ultiplication of proceedings includes, but is not limited to, abuse of discovery tactics, reassertion of meritless claims, and any other conduct that results in lengthening the proceedings." *Garcia v. Nachon Enter., Inc.,* Case No. 15-CV-23416-GAYLES/Turnoff, 2017 WL 2605052 at *2 (S. D. Fla. Apr. 24, 2017) (citations omitted).

This District expanded on the purpose of § 1927 in *Olguin*, 2019 WL 3426539 at *7: "[t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980).  Instead, the statute is "concerned only with limiting the abuse of court processes." *Id.* For this reason, **a court considering the propriety of a § 1927 award must focus "on the conduct of the litigation and not on its merits**." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (emphasis added).

## II.   Defendants' and Their Counsel's Conduct of the Litigation Reflects an Intentional Abuse of Court Processes.

"Great is the guilt of an unnecessary war." *Olguin*, 2019 WL 3426539 at *19 (quoting John Adams (1735-1826)). As in *Olguin*, the unnecessary full scale litigation war Defendants and Golden tenaciously pursued in this standard FDCPA case should have been quickly and inexpensively resolved at inception. Instead, it was frustrating and expensive for all parties, third party witnesses and their counsel, and this Court. Whether Defendants feel guilty (or even badly) about their tactics in this case is unknown, but the fact that their standing and failure to state a

---

[5] *See also An-Port, Inc. v. MBR; Indus., Inc.*, 142 F.R.D. 47, 49 (D.P.R. 1992) ("[T]he test for whether conduct is 'vexatious' under Section 1927 is whether it is objectively harassing or annoying so that it reflects a serious and studied disregard for the orderly process of justice.").

cause of action as to Count III defenses could have been resolved by this Court on a motion to dismiss, or at least identified together with a debt collector defense in an affirmative defense, suggests they do not.

Toste submits a reasonable attorney would have raised these issues at the earliest point possible in litigation to minimize not only his own clients' attorneys' fees, but also exposure to a damages and fee award to Toste under 15 U.S.C § 1692k, as well as minimizing the unnecessary expenditure of judicial resources – not necessarily in that order. Had they done so, most of the proceedings would not have occurred.

Their most egregious acts, because they are decided by the Court and not a jury (unlike the determination of debt collector), are the standing challenge and the failure to state a cause of action as to Count III. If either of these had been asserted in a motion to dismiss (which was never filed) or in Defendants' Answer and Affirmative Defenses [to Complaint: DE 16 (Nov. 5, 2020); DE 17 (Nov. 5, 2020); DE 31 (Dec. 2, 2020); to Amended Complaint DE 47, DE 48, DE 49 (all on Jan. 14, 2021)), they could have been resolved based on the allegations of the initial pleading alone, before Toste even served his first sets of discovery on Jan. 18, 2021.  Exhibit "B". Indeed, this is how *Trichell* standing challenges typically present themselves.[6] But instead, Defendants deliberately withheld the standing defense until the only matter pending before the Court before trial was the resolution of the second round of summary judgment motions.

That "gotcha" tactic rendered a waste all of this Court's and the parties' resources expended between mid-January and November 2021, including preparing for and participating in mediation in June 2021, three lengthy discovery hearings on the substantive issues, the issuance of numerous

---

[6] *See, e.g., Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020); *Spokeo v. Robins*, 136 S.Ct. 1540, 1549 (2016); *Gartrell v. J.J. Marshall & Assoc., Inc.,* Case No. 3:19-cv-442-J-32JBT, 2021 WL 1329147 at *1 (M.D. Fla. Jan. 28, 2021).

orders addressing the impact of Defendants' belated debt collector defense [DE 109, 110, 112, 114, 116, 130], not the least of which was an order granting sanctions for that tactic [DE 109], all of which at the end of the day wreaked havoc with the Court's trial docket. The delay in raising the standing challenge[7] also required the Court to resolve the standing issue before proceeding with the second round of summary judgment motions, and resulted in yet another continuance of the trial date. DE 142.[8] *See, e.g., Trustgard Ins. Co. v. Daniels*, No. 4:19-cv-130, 2020 WL 762541 at n.5 (S.D. Ga. Feb. 14, 2020)("Litigation is not meant to be a game of 'gotcha.'")

Similarly, all proceedings related to Count III, including summary judgment briefing, twice, and trial preparation, could also have been avoided. Defendants have never disputed that they filed the Claim of Lien in either their answers to the Complaint or Amended Complaint [DE 1 ¶ 82; DE 16 ¶ 82; DE 17 ¶ 82; DE 31 ¶ 82; DE 45 ¶ 82; DE 47 ¶ 82; DE  48 ¶ 82; DE 49 ¶ 82] although they dispute (without any evidence whatsoever) that the amounts sought were wrong. Ultimately, in addition to all of the preceding, the parties engaged in a second Court-ordered mediation and were preparing the joint pretrial stipulation and statements of undisputed facts. Toste was preparing witness lists, exhibit lists, jury instructions and a verdict form, after agreeing with Golden to share in the preparation of the pretrial filings. All of which could have been avoided if not for Defendants' and their counsel's gamesmanship.

But the somewhat unique twist which allows this Court to sanction Jacobs individually,

---

[7] The Court recognized the delay in its Paperless Order Rescheduling Trial in Miami: "Additionally, although Defendants have raised their instant jurisdictional challenge at a very late stage in the litigation, 'it is well settled that a federal court is obligated to inquire into [subject matter jurisdiction] whenever it may be lacking.' *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) (citations omitted)." DE 142.

[8] While undoubtedly standing can be raised at any time, Toste submits that the failure to raise it when all of the necessary facts are present is in bad faith and results in a prohibited "gotcha" tactic.

where he acted as the corporate representative of the Firm, as well as Arriola and Shapiro, in addition to Golden as counsel, under § 1927 is that Jacobs, Arriola and Shapiro are themselves *attorneys admitted to conduct cases in Florida courts*. As admitted attorneys, they fall within the scope of § 1927's ambit of sanctionable persons. Had they and Golden been forthcoming at the inception of the case about their defenses of standing, debt collector and failure to state a cause of action as to Count III, the Court, as well as the parties, and other participants who were ultimately drawn into the proceedings, could have been spared considerable time and expense.

Instead, Defendants withheld the defenses and allowed the case to proceed not only as if it were undisputed that Toste had standing, but as if they had asserted a debt collector defense and no defense to Count III. They allowed the case to proceed to summary judgment, twice, allowed the Court to extend the discovery deadline, twice, issue two continuances of trial, preside for hours over multiple discovery hearings – all while having facts in hand that could have resolved the case at the motion to dismiss stage. Even now, compounding the egregiousness of their actions, they ask this Court to decide (and Toste to respond to) two Rule 11 motions based on the undisputed facts of the Amended Complaint.

These facts establish the requisite connection between counsel's objectionable conduct and the multiplication of proceedings that would not have occurred otherwise. *See Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007). Taken in totality, this conduct is precisely the type of behavior which is sanctionable under § 1927.[9]

---

[9] *See U.S. v. Coulton*, Case No. 07-CR-60172- LENARD, 2013 WL 12086298 at *16 (S.D. Fla. Feb. 1, 2013) (imposing sanctions on an attorney who served as his own counsel for unreasonable behavior and untruthful testimony which directly contributed to the multiplication of the proceedings).

A.     **Defendants' and Golden's Actions Surrounding the Debt Collector Defense were Unreasonable and Vexatious.**

Golden, Jacobs, Arriola and Shapiro needlessly obstructed the litigation of Toste's claims through their conduct and discovery practices. A reasonable attorney would have raised all known defenses such as standing or failure to state a cause of action in a motion to dismiss or affirmative defense. A reasonable attorney would have complied with Rule 26 disclosure requirements. A reasonable attorney who had twice been sanctioned for failing to timely raise the debt collector defense – even more so. Golden and Jacobs did not. Neither did Arriola or Shapiro. There could be no reasonable or proper cause for the failure to do so. Rather, the only explanation for this tactic was that it was intended to harass. It reflects a serious and studied disregard for the orderly process of justice. There was no justification for the untimely defense under the circumstances.

Defendants have been sanctioned for failing to comply with Rule 26 disclosure requirements. DE 109. But their vexatious tactics with respect to the debt collector defense continued after that ruling. When Toste issued debt collector discovery relating to the eleventh hour debt collector defense, Defendants objected, asserting everything from attorney client privilege to work product yet failing to produce a privilege log. Admittedly, the Court sustained many of those objections. But when Jacobs objected that the permitted discovery was unduly burdensome because the Firm had over 1,500 matters, the Court recognized that they could not raise a defense and then deny discovery necessary to prove or disprove it. DE 144-6 P50 L19-21.

The Firm through Jacobs then argued it had very little documents – leaving the Court to reason it was one or the other, they either had an unmanageable amount, rendering them debt

collectors, or very little, supporting the opposite conclusion.[10]

Ultimately, Defendants produced over 2,714 documents related to the debt collector defense, of which 1,469 were produced after the September 21, 2021 discovery deadline imposed by Judge Becerra. DE 131.

As it turned out, what Defendants were deliberately attempting to withhold were 371 pages of notices of intent to lien [DE 174-5], 311 pages of notices of intent to foreclose [DE 174-7], 217 pages of foreclosure complaints [DE 174-8, 174-9] and 217 pages of claims of lien [DE 174-6] which constitute damaging evidence regarding their debt collector defense.

But after producing the documents, Defendants and their counsel advised Toste he could not use the notices of intent to lien [DE 174-5], notices of intent to foreclose [DE 174-7], foreclosure complaints [DE 174-8, 174-9] and claims of lien [DE 174-6] produced because they were confidential. Toste disagreed and was forced to seek judicial intervention [DE 169] and this Court ordered Defendants to show cause why the documents would need to be sealed. DE 170. Faced with that order, Defendants advised they would not challenge Toste's motion, requiring Toste to so report to the Court [DE 171] and this Court had to enter yet another order in a docket quickly approaching the 200 entry mark. These vexatious actions following the Court's order sanctioning Defendants [DE 109] unnecessarily and unreasonably multiplied the proceedings,

---

[10] Judge Becerra reviewed Jacobs' Affidavit where Jacobs swore it would take several *days* for him to compile the discovery sought and rejected the Firm's burdensome argument. DE 131, Sept. 14, 2021 Trans.; DE 144-6 P13 L16-25; P14 L-7; DE 144-7.

Judge Becerra, in determining the proper time frame was from 2016-2019, specifically noted that "if the defense [is] we just don't do a lot of this work, that undercuts the burden is the problem." Sept. 14, 2021 Trans. DE 144-6 P16 L24 P17 L1-2. "But the fact that your client has spent a few days of getting his information is not – I mean, that's not a significant burden." *Id*. P18- L23-25. Judge Becerra heard, and rejected, testimony from Jacobs himself on this issue. Ex. 144-6 P23-27; P29 L23-25, P30-P31 L1-7; P48-52.

beyond a doubt. Defendants' and Golden's actions have caused not only unnecessary delay and increased the cost of litigation for the parties, but have also unnecessarily increased the burden on the Court. As such, their actions with respect to the debt collector defense taken as a whole, leading up to and after the entry of the Court's Order [DE109] warrant the imposition of §1927 sanctions.

> **B.     Standing was Raised After Renewed Summary Judgment Motions for no Purpose Other than to Harass.**

The facts supporting Defendants' standing challenge were alleged in the Amended Complaint served on January 8, 2021. DE 45. Defendants could have challenged standing at that point, but deliberately or not, chose not to. A reasonable attorney would have done so, as demonstrated by the typical standing challenge brought at the motion to dismiss stage. *See* n. 6 *supra*.

Instead, Defendants and Golden waited nearly nine (9) months, and allowed: summary judgment motions and responses to be fully briefed; sanctions proceedings to take place on the debt collector issue; written discovery to all Defendants on the debt collector issue to be served, responded to, and disputes regarding same to be heard by Judge Becerra, as well as allowing this Court to issue continuances as a result of same; and numerous subpoenas to be issued which resulted in 4 depositions, affidavit testimony from 2 witnesses, as well as production from 5 third party witnesses.

There exists no reasonable or proper cause for a party's deliberate delay of a standing challenge when the alleged facts or sworn testimony on which it will rely are available. Here, the facts supporting Defendants' standing challenge were in their hands on January 8, 2021. Therefore, the only explanation for this tactic was that it was intended to harass Toste and his counsel, who have previously sued the Firm in other instances for FDCPA and FCCPA violations. It reflects a serious and studied disregard for the orderly process of justice and was entirely unjustified under

the circumstances. Additionally, as previously set forth, any reasonable attorney would raise the standing challenge as early as practicable, in order to minimize his client's liability exposure on the substantive claims, the attorneys' fees he will collect from his client, the exposure for attorneys' fees under §1692k, and unnecessary expenditure of judicial resources. Defendants and Golden intentionally or otherwise did not, rendering their actions sanctionable.

    **C.    Rule 11 Motions Filed Post-Dismissal are Unreasonable, Vexatious and Unnecessarily Multiply the Proceedings.**

Defendants and their counsel have filed two Rule 11 Motions. The first, filed by the Firm, Arriola and Shapiro, asserts that Toste's 1692c(b) cannot proceed because it is based on Defendants' filing of a claim of lien. DE 193. The second, Shapiro's Motion, argues that Count III was frivolous because he is not a debt collector. Both issues were pending resolution on summary judgment at the time of dismissal.

    <u>Defendants' Rule 11 Motion as to Count III</u>

Besides misidentifying the defendants against whom this count is brought,[11] Defendants and Golden also misstate its basis. The count was brought not because Defendants filed a Claim of Lien, but because the Claim of Lien they filed in public records sought the wrong amounts. More specifically, Count III asserts an FDCPA violation for the <u>publication of false information relating to the amounts owed by Toste</u> to the Association via the execution and recording of a Claim of Lien in Miami-Dade County's public records for all to see. DE 1 Ct. III (incorporating allegations as to wrong amounts); DE 45, Ct. III (same).

This Rule 11 motion was served on September 16, 2021, before Defendants asserted their

---

[11] While this Count is brought only against the Firm and Shapiro, Arriola also joined this Rule 11 Motion, and is also therefore subject to sanctions.

(renewed) summary judgment motion on October 18, 2021, raising the same arguments [DE 154], to which Toste responded. DE 163 p. 14 (incorporating arguments in DE 167 pp. 12-17).[12]

This Court, of course, never reached the merits of Defendants' summary judgment motion prior to dismissing the case, after which Defendants filed their Rule 11 Motion. DE 193. And even if the Court had disagreed with Toste's legal assessment, this District has held that:

> …a misapplication of the facts and the law does not warrant Rule 11 sanctions. If that was the governing principle, Rule 11 would be applied whenever an unpersuasive motion is presented to the Court. That is not how we apply Rule 11 because even if an argument is substantively unpersuasive that does not mean it is frivolous. Indeed, the policy underlying Rule 11 is to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'

*Center for Individual Rights v. Chevaldina*, Case No. 16-20905-Civ-KING/TORRES, 2018 WL 2432109 at *18 (S.D. Fla. May 30, 2018) (denying Rule 11 motion based on motion that misapplied the law).

Notably, what is now referred to as the *Hunstein II* opinion, *Hunstein v. Preferred Collection and Mgmt. Serv., Inc.*, 17 F.4th 1016 (11th Cir. Oct. 28, 2021), vacated and replaced the opinion in *Hunstein I*, *Hunstein v. Preferred Collection and Mgmt. Serv., Inc.*, 994 F.3d 1341 (11th Cir. Apr. 21, 2021). Toste had relied on *Hunstein I* in his Response in Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction. DE 158 pp, 4-5, 9.

*Hunstein II* (deciding standing at the motion to dismiss stage) held that the plaintiff in that 1692c(b) case had standing because: "…(1) the alleged violation of § 1692c(b) case bears a close relationship to a harm that American courts have long recognized as cognizable  and (2) Congress's judgment indicates that violations of § 1692c(b) constitute a concrete injury." *Id.* at Sec. II(c)(2).

Both *Hunstein I* and *Hunstein II* favor Toste – but *Hunstein II* has since been vacated but

---

[12] To avoid unnecessary duplication and repetition, Toste incorporates his responsive arguments here in their entirety, and asserts that Count III has both a factual and legal basis as described therein.

will be reheard *en banc*. That the Eleventh Circuit has found it appropriate to hear that 1692c(b) case *en banc*, after two prior decisions, highlights the state of flux in binding case law in determining standing in a case like this one, asserting a 1692c(b) violation.

For these reasons, the pursuit of Rule 11 sanctions is unreasonable and vexatious where it continues to multiply the proceedings unnecessarily. This is because Count III is objectively not frivolous, as argued in his response to Defendants' motions for summary judgment [DE 163], where it was based on case law preceding *Hunstein I* which remains good law today and Toste also asserted facts establishing publication of false information detrimental to him. As such, throughout this case, Count III had a reasonable chance of success. *Fed. R. Civ. P*. 11. This is particularly true where it is undisputed that Defendants published in Miami Dade County's public records the Claim of Lien as attached to the Complaint [DE 155 ¶ 3 citing to DE 45-7; DE 1 ¶ 82; DE 16 ¶ 82; DE 17 ¶ 82; DE 31 ¶ 82; DE 45 ¶ 82; DE 47 ¶ 82; DE  48 ¶ 82; DE 49 ¶ 82] and have produced no evidence whatsoever to challenge Toste's expert's analysis that the amounts on the face of that lien were false and misrepresented the amounts Toste owed. DE 81-13.

 Where misapplication of the facts and the law does not warrant Rule 11 sanctions as previously discussed, and the current state of standing under § 1629c(b) claims was in flux on November 24, 2021 when this Rule 11 motion was filed, the only purpose behind Defendants' Motion was to harass Toste and unreasonably and vexatiously multiply the proceedings before this Court.

<u>Shapiro's Rule 11 Motion as to Debt Collector</u>

Much of the preceding analysis applies here. The argument that he is not a debt collector was first raised by Shapiro on June 11, 2021 in Defendants' summary judgment motion [DE 78] which resulted in sanctions. DE 109. Toste responded to it then [DE 88] and again, when Shapiro

raised it once more, post-debt collector discovery, on October 18, 2021 in his renewed Motion for Summary Judgment. DE 152; DE 167.[13] Just before filing that renewed Motion, on October 4, 2021, Shapiro served his Rule 11 Motion – but he did not file it until November 24, 2021, *after* the Court dismissed the case. Shapiro, having known since November 10, 2020 when he accepted service of the Complaint that he would be challenging his debt collector status, <u>waited nearly seven months to first raise the issue at summary judgment in June 2011</u>. Then, solely for purposes of harassment because there was no resolution on the debt collector issue where the case was dismissed, he filed his Rule 11 Motion. DE 194.

       For purposes of the instant Motion, Toste asserts that by filing both Rule 11 Motions after the case was dismissed, Defendants and Golden continued their 'scorch the earth' defense of a case on issues that could have been resolved based upon the facts asserted in the Complaint and Amended Complaint. All of the undisputed facts necessary to raise the arguments relating to Count III [DE 193] were before the Court and in Defendants' hands at inception, as were those of Shapiro being a debt collector. DE 194.  Moreover, Toste's assertion that Shapiro was a debt collector regardless of *Obduskey* was warranted by existing law, for example, *Birster v. American Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 583 (11th Cir. 2012) and *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012). Finally, additional evidence[14] supporting

---

[13] To avoid unnecessary duplication and repetition, Toste incorporates his responsive arguments here in their entirety. Briefly, Toste first asserted that the evidence before the Court of Shapiro's actions created a genuine issue of material fact as to whether Shapiro was a debt collector, appropriate for determination by a jury. DE 88; DE 167. The second issue was whether, in Florida, enforcers of a security interest can be held liable in Florida under the FDCPA; that issue was heavily litigated between the parties. DE 78; DE 88; DE 152; DE 167.

[14] Attached to the Amended Complaint were 18 Claims of Lien executed by Shapiro on behalf of the Firm, not just the one at issue in Toste's case, proffering evidence from day one of Shapiro's (and the Firm's status as debt collector.) That identical evidence was found sufficient by Judge Williams in *Zuniga* to allow the debt collector issue to go to the jury. *See Zuniga v. Jacobs*, 2020 WL 168106 at*9, Case No. 18-CV-22303-WILLIAMS (S.D. Fla. Jan. 13, 2020).

Toste's allegations that Shapiro was a debt collector was obtained in the delayed debt collector discovery and was sufficient to create a material issue of fact on that issue, which ultimately would have been decided by the jury.

For the afore-stated reasons, both a factual and legal basis for Count III and Shapiro's status as a debt collector existed throughout the proceedings, which not only bars any Rule 11 sanctions, but renders the attempt to obtain such relief, particularly post-dismissal, unreasonable and vexatious, and unnecessarily multiplies the proceedings, thereby justifying sanctions under § 1927.

### III.   Defendants, their Counsel and Their Counsel's Firm are Properly Sanctioned Using the Court's Inherent Powers.

Toste also moves for sanctions against Golden, the Golden Firm, the Firm, Jacobs, Arriola, and Shapiro under the Court's inherent powers.

"[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.'" *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir.1985) (citation omitted). Courts' inherent power also extends to parties to litigation. *Chambers v. NASCO, Inc.,* 111 S. Ct. 2123, 2133, (1991). A court may appropriately sanction a party or attorney who "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978). Under its inherent powers, a court can sanction both an attorney and the attorney's law firm for bad faith litigation conduct. *See Collar v. Abalux*, Case. No. 16-20872-CIVLENARD/GOODMAN, 2018 WL 3328682 at *1 (S.D. Fla. July 5, 2018).[15]

---

[15] *See also  Spolter v. Suntrust Bank*, 403 F. App'x 387, 391 (11th Cir. 2010) (affirming award of fees against individual lawyer and his law firm pursuant to the court's inherent powers); *Maale v. Kirchgessner*, No. 08–80131–CIV, 2011 WL 1458147, at *4 (S.D. Fla. Apr. 15, 2011) (awarding

However, because a court's inherent powers are so potent, they must be exercised with restraint and discretion. *Chambers,* 111 S.Ct. at 2132. "With this in mind, [the Eleventh Circuit has held] that before a court can impose sanctions on an attorney under its inherent powers, it must make a finding of bad faith.") *Amlong & Amlong*, 457 F.3d at 1202. *See also Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ("[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" (citations omitted.)

As to the conduct of Golden and the Golden Firm, "[a] district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers." *Amlong & Amlong*, 457 F.3d at 1189 (citation omitted). Thus, "[i]f the sanctions [are] permissible under § 1927, then they [are] proper, and there is no need to examine whether the sanctions [are] also permissible under the court's inherent powers." *Id.*

For the reasons set forth in the § 1927 analysis above, Toste asserts sanctions are also justified against Golden and the Golden Firm under this Court's inherent powers.

The Firm (through Jacobs' actions as its corporate representative), Jacobs himself, Arriola, and Shapiro, all attorneys, each played integral parts in the discovery antics previously described which provide the basis of Golden and the Golden Firm's sanctions here. The Firm, with Jacobs as its corporate representative, Shapiro and Arriola, working with Golden and the Golden Firm, all waited until the eleventh hour to file Rule 11 motions based on facts they had in hand since day one, allowing Count III to proceed, and ultimately becoming the subject of two motions for

---

sanctions against attorney and his former law firm, jointly and severally, based upon the Court's inherent power).

summary judgment.

Golden, the Golden Firm, the Firm, Jacobs, Arriola and Shapiro, as attorneys, are all familiar with the very fundamental concept of standing. Yet deliberately waiting to raise a standing challenge until the eve of trial, while conceding they had not only the alleged facts but the evidentiary support they needed to do so in that same motion since at least January 2021 is bad faith. DE 140 citing to DE 140-1 and 140-7.  These actions warrant sanctions under the Court's inherent powers.

Toste submits that where Defendants, Jacobs, Golden, and Golden's Firm were on notice of Toste's grounds for standing and the allegations of Count III since they were served with the Amended Complaint on January 8, 2021, an award of sanctions in the form of attorneys' fees and costs from that date until the resolution of this Motion is proper for the reasons described herein.[16]

### CONCLUSION

Defendants unnecessarily prolonged this lawsuit. Despite having the facts necessary to the facts necessary to raise a standing challenge, and any challenge to Count III from January 8, 2021 when the Amended Complaint was served, they deliberately chose to withhold those challenges for months on end. These tactics evidence an apparent focused strategy to allow Toste to pursue his claims without knowledge of defenses that could easily have been raised in a motion to dismiss. That strategy simultaneously resulted in this Court wasting time and resources, as well as Plaintiff's wasting time, expense and effort involved in pursuing the case to trial, all with the blessing, if not at the directive, of the attorney clients. This is precisely the type of bad faith conduct which justifies attorney's fees under both § 1927 and the Court's inherent power.

---

[16] Toste is not waiving and explicitly reserves his right to appeal the Court's Order dismissing the case for lack of standing. DE 191.

In affirming 1927 sanctions and sanctions under the court's inherent power resulting from bad faith and willful abuse of the judicial process, the Eleventh Circuit in *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (1993) explicitly reminded attorneys of their duties to the Court:

> All attorneys, as "officers of the court," owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself. In England, the first licensed practitioners were called "Servants at law of our lord, the King" and were absolutely forbidden to "decei[ve] or beguile the Court." In the United States, the first Code of Ethics, in 1887, included one canon providing that "the attorney's office does not destroy ... accountability to the Creator," and another entitled "Client is not the Keeper of the Attorney's Conscience."

> Unfortunately, the American Bar Association's current Model Rules of Professional Conduct underscore the duty to advocate zealously while neglecting the corresponding duty to advocate within the bounds of the law. As a result, too many attorneys have forgotten the exhortations of these century-old canons. Too many attorneys, like defense counsel in this case, have allowed the objectives of the client to override their ancient duties as officers of the court. In short, they have sold out to the client.

> We must return to the original principle that, as officers of the court, attorneys are servants of the law rather than servants of the highest bidder. We must rediscover the old values of our profession. The integrity of our justice system depends on it.

Toste submits that all of the defense attorneys, including Jacobs on behalf of his Firm and Arriola and Shapiro as the clients, with their willful participation in Golden's and the Golden Firm's litigation strategy, have abrogated their duties of candor and loyalty to the Court in their defense of this case, rendering the requested sanctions appropriate. [17]

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)

Attorneys for the Plaintiff certify that they have complied with the requirements of Local Rule 7.3(b) by serving on December 15, 2021 a draft copy of this Motion via electronic mail on counsel for the Defendants, which was at least thirty (30) days prior to the January 15, 2022

---

[17] Plaintiff sought bifurcation of the issues of entitlement and amount of attorney's fees. [DE 206]

deadline to file this Motion with the Court.

### GOOD FAITH CERTIFICATE PURSUANT TO LOCAL RULE 7.3(b)

I hereby certify that a good faith effort to resolve the issue of entitlement to attorney's fees under 28 U.S.C. § 1927 occurred via telephone conference on January 4, 2021 (within 21 days of service of the draft Motion) pursuant to Local Rule 7.3(b) between: Alejandro Vilarello, Esq., Alejandro Vilarello, P.A., and Thais Hernandez, Esq., The Law Firm of Thais Hernandez, Esq., for Plaintiff, Segundo Toste; and Dale Golden, Esq., and Jeff Albinson, Esq, Golden Scaz & Gagain, P.A. for defendants Russell S. Jacobs, P.A., Scott Shapiro, and Pablo A. Arriola. One issue was resolved, resulting in the revision of one sentence in the Conclusion. All other issues remain unresolved.

Respectfully submitted,

By:   /s/ Thais Hernandez
Thais Hernandez, Esq.
Florida Bar No. 180998
The Law Firm of Thais Hernandez, Esq.
8004 N.W. 154 Street #414
Miami Lakes, Florida 33016
Tel: 786.923.0850
Fax: 305.570.2192
Email: thernandezlaw@bellsouth.net
*Attorney for Plaintiff Segundo Toste*

By: */s/ Anthony Dieguez*
Anthony Dieguez, Esq.
Florida Bar Number: 155409
Attorney E-mail Address: anthony@dieguezlaw.com
Rebekah E. Guerrero, Esq.
Florida Bar Number: 1002231
Attorney E-mail Address: rebekah@dieguezlaw.com
DIEGUEZ & ASSOCIATES, PLLC.
7950 NW 155 Street, Suite 207
Miami Lakes, FL 33016
Telephone: (305) 556-4106
Fax: (305) 362-3902
*Attorney for Plaintiff Segundo Toste*

By:   /s/ Alejandro Vilarello
Alejandro Vilarello, Esq.
Florida Bar No. 358177
E-mail: AVLaw@Vilarello.com
Alejandro Vilarello, P.A.
16400 NW 59th Avenue, 2nd Fl.
Miami Lakes, FL 33014
Phone: (305) 827-5665 x: 148
E-Fax. (786) 429-0957
Cell: (305) 299-5550
*Attorney for Plaintiff Segundo Toste*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>10th</u> day of January, 2022 I electronically served via CM-ECF the foregoing document on all counsel of record on the below Service List.

  /s/ Anthony Dieguez   
**ANTHONY DIEGUEZ**
Fla. Bar No. 155409

## SERVICE LIST

Thais Hernandez, Esq.
Florida Bar No. 180998
The Law Firm of Thais Hernandez, Esq.
8004 N.W. 154 Street #414
Miami Lakes, Florida 33016
Tel: 786.923.0850
Fax: 305.570.2192
Email: thernandezlaw@bellsouth.net
*Attorney for Plaintiff Segundo Toste*

Alejandro Vilarello, Esq.
Florida Bar No. 358177
E-mail: AVLaw@Vilarello.com
Alejandro Vilarello, P.A.
16400 NW 59th Avenue, 2nd Fl.
Miami Lakes, FL 33014
Phone: (305) 827-5665 x: 148
E-Fax. (786) 429-0957
Cell: (305) 299-5550
*Attorney for Plaintiff Segundo Toste*

Dale T. Golden, Esq.
Florida Bar No.: 0094080
dgolden@gsgfirm.com
Joseph C. Proulx, Esq.
Florida Bar No.: 0056830
jproulx@gsgfirm.com
GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
Fax: (813) 251-3675
*Attorneys for Defendant Russell S. Jacobs,*
*P.A., Defendant Pablo A. Arriola, and*
*Defendant Scott R. Shapiro*

Anthony Dieguez, Esq.
Florida Bar Number: 155409
Attorney E-mail Address:
anthony@dieguezlaw.com
Rebekah E. Guerrero, Esq.
Florida Bar Number: 1002231
Attorney E-mail Address:
rebekah@dieguezlaw.com  DIEGUEZ &
ASSOCIATES, PLLC.
7950 NW 155 Street, Suite 207
Miami Lakes, FL 33016
Telephone: (305) 556-4106
Fax: (305) 362-3902
*Attorney for Plaintiff Segundo Toste*

## VERIFICATION

I hereby swear and affirm that the allegations made within this Verified Motion are true and correct to the best of my knowledge and belief. I understand that this statement is made subject to penalty of perjury.

_____
Thais Hernandez, Esq.
Florida Bar No. 180998

STATE OF FLORIDA        )
SS.:                    )
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, personally appeared, **Thais Hernandez**, who is (personally known to me) or who has produced **FL Driver's License** as identification, and who did/did not take an oath and acknowledged before me that he/she executed the foregoing on this the **5th** day of **January**, 2022.

NOTARY PUBLIC:

Sign: _____

Print: _____ Thomas Hurst _____

State of Florida at Large

Commission Expires: 9/5/24

THOMAS HURST
MY COMMISSION # GG 984632
EXPIRES: September 5, 2024
Bonded Thru Notary Public Underwriters

## VERIFICATION

I hereby swear and affirm that the allegations made within this Verified Motion are true and correct to the best of my knowledge and belief. I understand that this statement is made subject to penalty of perjury.

By: _____
Alejandro Vilarello, Esq.
Florida Bar No. 358177

STATE OF FLORIDA          )
SS.:                      )
COUNTY OF MIAMI-DADE )

BEFORE   ME,   the   undersigned   authority,   personally   appeared, _Alejandro Vilarello_, who is personally known to me or who has produced _Fl. Driv._ as identification, and who did/did not take an oath and acknowledged before me that he/she executed the foregoing on this the __5th__ day of _January_, 2022.

NOTARY PUBLIC:

Sign: _____

Print: _____

State of Florida at Large

Commission Expires: 9/5/24

THOMAS HURST
MY COMMISSION # GG 984632
EXPIRES: September 5, 2024
Bonded Thru Notary Public Underwriters

## VERIFICATION

I hereby swear and affirm that the allegations made within this Verified Motion are true and correct to the best of my knowledge and belief. I understand that this statement is made subject to penalty of perjury.

By: _____

Rebekah E. Guerrero, Esq.
Florida Bar No. 1002231

STATE OF FLORIDA          )
SS.:                              )
COUNTY OF MIAMI-DADE  )

BEFORE ME, the undersigned authority, personally appeared, _Rebekah E. Guerrero_ who is personally known to me or who has produced _____ as identification, and who did/did not take an oath and acknowledged before me that he/she executed the foregoing on this the _6o_ day of _January_, 2022.

NOTARY PUBLIC:

Sign: _____

Print: _____Yamilette Cisneros_____

State of Florida at Large

Commission Expires:

YAMILETTE CISNEROS
Notary Public - State of Florida
Commission # HH 100589
My Comm. Expires Apr 29, 2025
Bonded through National Notary Assn.