**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:20-cv-23771-KMM**

SEGUNDO TOSTE,

          Plaintiff,

   v.

THE BEACH CLUB AT
FONTAINEBLEAU CONDO. ASS'N,
INC., a Florida Corporation, RUSSELL
S. JACOBS, P.A., a Florida corporation,
a/k/a The Jacobs Law Group, PABLO A.
ARRIOLA, individually, and SCOTT R.
SHAPIRO, individually

          Defendants.

---

**Defendants' Response to Plaintiff's Motion for Sanctions**

GOLDEN SCAZ GAGAIN, PLLC
1135Marbella Plaza Drive
Tampa, Florida 33619

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

Page

I.   Introduction……………………………………………………..…………….…….1

II.  Legal Standard…...……..………………………………...……………………...…..1

III. Argument…………………………………………………………………….....2

1. Neither "jurisdictional standing" nor "failure to state a cause of action" is an affirmative defense, as the Plaintiff argues, and a facial attack on jurisdiction directed at the Amended Complaint would have likely been denied……….…..2

   a) As pleaded, the allegations of payment of attorneys' fees likely created jurisdiction………………………………………………………….…..5

   b) The allegations of "wasted time" may have been sufficient to create jurisdiction………………………………………………………….…..7

2. The Plaintiff has taken contradictory positions in this case, arguing now that the Defendants' failure to file motions earlier prolonged the litigation, after arguing earlier that the Defendants' motions on jurisdiction and the § 1692c(b) claim were so frivolous as to warrant sanctions………………………………………9

3. The Plaintiff's Motion contains assertions that are unsupported by the record or, in fact, contradicted by the record…………………………………………11

   (i)   "The delay in raising the standing challenge also required the Court to resolve the standing issue before proceeding with the second round of summary judgment motions, and resulted in yet another continuance of the trial date."……………………………………………………….…..12

   (ii)  The Plaintiff claims the Defendants employed "vexatious tactics" in responding to the Plaintiff's discovery requests yet admits "the Court sustained many of [Defendants' discovery] objections."………………..12

   (iii) "As it turned out, what Defendants were deliberately attempting to withhold were 371 pages of notices of intent to lien [DE 174-5], 311 pages of notices of intent to foreclose [DE 174-7], 217 pages of foreclosure complaints [DE 174-8, 174-9] and 217 pages of claims of lien [DE 174-6] which constitute damaging evidence regarding their debt collector defense."…………………………………………………………….13

i

(iv) "Defendants and their counsel advised Toste he could not use the notices of intent to lien [DE 174-5], notices of intent to foreclose [DE 174-7], foreclosure complaints [DE 174-8, 174-9] and claims of lien [DE 174-6] produced because they were confidential." ……………………………..14

(v) "…this [was] standard FDCPA case [that] should have been quickly and inexpensively resolved at inception."……………15

4. The Plaintiff carelessly and needlessly multiplied the proceedings by flippantly scheduling, canceling, rescheduling, and re-cancelling depositions in September and filing multiple redundant motions……………………………15

IV.   Conclusion………………………………………………………………………...…19

## TABLE OF AUTHORITIES

Page(s)

Cases

4:20-CV-01033-LPR,
2021 WL 4392276 (E.D. Ark. Sept. 24, 2021)..................................................... 5
2021 WL 4133733 (September 10, 2021)............................................................ 6
*Allen v. Robert F. DeLuca, M.D., P.A.*,
2019 WL 5578100 (S.D. Fla. Oct. 29, 2019) .............................................. 1, 8
*Amlong,*
500 F.3d .......................................................................................................... 1
*Baker v. Carr,*
369 U.S. 186 (1962) ...................................................................................... 4
*Boldstar Tech., LLC v. Home Depot, Inc.*,
517 F. Supp. 2d 1283 (S.D. Fla. 2007)........................................................... 2
*BPI Sports, LLC v. ThermoLife Int'l, LLC*,
2021 WL 966011 (S.D. Fla. Mar. 5, 2021) ................................................... 2
*Cont'l Cas. Co. v. McCabe Trotter & Beverly, P.C.*,
2021 WL 3811383 (D.S.C. Aug. 26, 2021)................................................. 10
*Crosby v. Jones*,
705 So.2d 1356 (Fla. 1998) ........................................................................... 2
*Id.*,
176 F. Supp. 2d 1301 (M.D. Fla. 2001)....................................................... 11
*Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*,
615 Fed. Appx. 533 (11th Cir. 2015) ............................................................ 2
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 4

*McFarlin v. Conseco Servs., LLC,*
   381 F.3d 1251 (11th Cir. 2004) ................................................................. 3

*MSPA Claims 1, LLC v. Tenet Fla., Inc.,*
   918 F.3d 1312 (11th Cir. 2019) ................................................................. 6

*Muransky v. Godiva Chocolatier,*
   979 F.3d 917 (11th Cir. 2020) ................................................................... 5

*Peterson v. BMI Refractories,*
   124 F.3d 1386 (11th Cir. 1997) ...................................................... 1, 4, 9, 11

*Pinkston v. Univ. of S. Florida Bd. of Trustees Larsen,*
   2019 WL 1877340 (M.D. Fla. Apr. 26, 2019) ......................................... 3

*Salcedo v. Hanna,*
   936 F.3d 1162 (11th Cir. 2019) ................................................................. 7

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ............................................................................... 4

*Steel Co. vs. Citizens for a Better Environment,*
   523 U.S. 83 (1998) .......................................................................... 5, 6, 10

*United States v. Hays,*
   515 U.S. 737 (1995) ................................................................................... 4

*Vera v. Rodriguez,*
   2017 WL 6621048 (D.N.M. Dec. 27, 2017) ........................................... 3

*Warth v. Seldin,*
   422 U.S. 490 (1975) ................................................................................... 4

*Williams v. Beto,*
   354 F.2d 698 (5th Cir. 1965) ..................................................................... 2

*Zedner v. United States,*
   547 U.S. 489 (2006) ................................................................................... 9


Statutes
28 U.S.C. § 1927 ............................................................................................. 11


Rules
Fed. R. Civ. P. 45 ............................................................................................ 18


Other Authorities
*DE 174* ................................................................................................... 13, 14
DE 191 .......................................................................................................... 19

## I. Introduction.

The Plaintiff acknowledges that § 1927 outlaws conduct that "multiples the proceedings in any case unreasonably and vexatiously." But oddly claims that Defendants and their counsel engaged in "particularly reprehensible" conduct by *failing to pursue* certain motions that would have multiplied the proceedings. And he cites not a single case in which any court has sanctioned an attorney under § 1927 for *failing* to litigate a motion at a particular time in a case.[1]

## II. Legal Standard.

"Before the Court may impose sanctions, it must determine by clear and convincing evidence that a litigant or counsel have acted in bad faith." *See, Allen v. Robert F. DeLuca, M.D., P.A.*, 2019 WL 5578100, at *2 (S.D. Fla. Oct. 29, 2019). In addressing the standard of review of § 1927 motion in *Amlong & Amlong,* the Eleventh Circuit Court ruled:

> Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be "unreasonabl[e] and vexatious[ ]" if it is done with a malicious purpose or intent.

*Id.*, 500 F.3d 1230, 1241 (11th Cir. 2007).

And the Eleventh Circuit has also made clear that:

> In order for § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings. Under the plain statutory language, objectionable conduct—even "unreasonable and vexatious" conduct—is not sanctionable unless it results in proceedings that would not have been conducted otherwise.

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

---

[1] The Plaintiff also asks the court to sanction the Defendants and their counsel pursuant to its "inherent powers." But "the court's inherent power to issue sanctions for vexatious conduct by attorneys does not reach further than § 1927." *See, Amlong,* 500 F.3d at 1239.

## III. Argument

1. **Neither "jurisdictional standing" nor "failure to state a cause of action" is an affirmative defense, as the Plaintiff argues, and a facial attack on jurisdiction directed at the Amended Complaint would have likely been denied.**

> The practice of law is an art as well as a science. As no two [lawyers] can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight.

*Williams v. Beto*, 354 F.2d 698, 706 (5th Cir. 1965).[2]

Relying on "the better light of hindsight," the Plaintiff claims any "reasonable attorney would have raised all known defenses such as standing or failure to state a cause of action in a motion to dismiss or affirmative defense." Doc. 207 at p. 9. But he cites nothing supporting his 20/20 hindsight argument, which is flawed for two (2) reasons.

First, "failure to state a cause of action" is not an affirmative defense. *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) ("Failure to state a claim is a defect in the plaintiff's claim [] it is not properly asserted as an affirmative defense."). And the same is true with respect to Article III standing/subject matter jurisdiction. *See*, *BPI Sports, LLC v. ThermoLife Int'l, LLC*, 2021 WL 966011, at *4 (S.D. Fla. Mar. 5, 2021) ("Lack of subject matter jurisdiction … is not an affirmative defense.") So, neither was required to be pleaded as an affirmative defense.

Second, there are numerous, valid reasons an attorney may decide not to bring a motion to dismiss. For example, counsel may believe a motion to dismiss is unlikely to be granted, or if

---

[2] The Florida Supreme Court has expressly recognized that attorneys are not "guarantors of their services" because decision-making during litigation is not a black or white proposition. That Court has in fact ruled that lawyers are generally shielded from legal malpractice liability for "good faith tactical decisions" made during litigation. *See*, *Crosby v. Jones*, 705 So.2d 1356, 1358 (Fla. 1998); *see also*, *Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*, 615 Fed. Appx. 533, 538 (11th Cir. 2015) (unpublished) (recognizing that in Florida, "[g]ood faith tactical decisions *or* decisions made on a fairly debatable point of law.") (emphasis in original).

it is, the plaintiff will be given leave to amend. Pursuing a partial Rule 12(b)(6) motion to dismiss or an Article III motion that is likely to be denied only to be relitigated later through another set of motions, responses, and replies "waste[s] judicial resources, unnecessarily burden[s] the litigants, and ultimately prove[s] counterproductive because ... they create additional haystacks in which courts are obliged to look for the needle." *See*, *Vera v. Rodriguez*, 2017 WL 6621048, at *1 (D.N.M. Dec. 27, 2017). As detailed below, had the Defendants pursued a facial attack on the Amended Complaint, it was likely—if not probable—that motion would have been denied. Filing a motion to dismiss in that circumstance would have likely resulted in a second motion, this time making a factual attack on jurisdiction, later in the case.

And filing a partial motion to dismiss aimed in Count III wouldn't have disposed of the entire case, if successful. It would instead give birth to more motion practice down the line. The better practice is what the Defendants did here by including Count III in its summary judgment motion. Yet the Plaintiff claims the Defendants engaged in sanctionable conduct by not filing a *partial* motion to dismiss seeking dismissal of Count III, ignoring that Courts have repeatedly ruled "permitting piecemeal litigation is bad policy." *See,* e.g., *Pinkston v. Univ. of S. Florida Bd. of Trustees Larsen*, 2019 WL 1877340, at *2 (M.D. Fla. Apr. 26, 2019), citing, *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004).

It is worth noting that the Amended Complaint also contained a claim for negligent misrepresentation. *See*, Doc. 45 at p. 27. Instead of filing a partial motion to dismiss on that claim and the § 1692c(b) claim, the Defendants served Rule 11 motions on each. The Plaintiff dropped the negligent misrepresentation claim (*see*, Doc. 117), but refused to do the same with respect to the § 1692c(b) claim. The Rule 11 motions, while not disposing of the § 1692c(b) claim, streamlined the case by getting rid of the negligent misrepresentation claim without

involving the court.

As for challenging Article III jurisdiction when the Amended Complaint was filed, that motion would have probably been denied thereby wasting counsels' and the court's time. The doctrine of standing addresses whether "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). To meet the "irreducible constitutional minimum" of standing, a plaintiff must allege facts showing he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).[3]

If the Defendants had done what the Plaintiff argues they were required to do to avoid violating § 1927—moved to dismiss the Amended Complaint—that motion would have been a "facial attack" on this court's subject matter jurisdiction. "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Spokeo*, supra at 1529 (internal citations and quotations omitted). When deciding if the facts alleged in the Amended Complaint were sufficient to create Article III jurisdiction, the court would have been required to apply the following standard: "it's long been known that even

---

[3] The court is no doubt aware that it has "an independent obligation to examine … jurisdiction." *United States v. Hays,* 515 U.S. 737, 742 (1995). It is therefore reasonable to assume that if the court believed jurisdiction was lacking based on the allegations in the Amended Complaint, it would have dismissed the case on that basis. Likewise, under the theories advanced in the motion at bar, Toste and his lawyers likely also had an obligation to determine the standing issue and, if warranted, seek voluntary dismissal the moment they recognized the alleged deficiency.

at the pleading stage, the litigant must clearly and specifically set forth facts to satisfy the requirements of Article III." *Muransky v. Godiva Chocolatier,* 979 F.3d 917, 924 (11th Cir. 2020).

In the Motion at bar, the Plaintiff implicitly argues the Amended Complaint *satisfied* the *Muransky* standard because it "clearly alleged facts **supporting** Toste's standing." *See*, Doc. 207, p. 2 (emphasis added). Regardless of whether that statement is true or not, it is entirely inconsistent with the Plaintiff's contention now that the Defendants were required to challenge standing in response to the Amended Complaint to avoid violating § 1927 by needlessly prolonging the case. This internal schism in the Plaintiff's argument proves his Motion is not well founded.

In a designed attempt to create Article III standing, the Amended Complaint contained a number of factual allegations that the Plaintiff wasted time and paid money to an attorney to address the Defendants' letters claiming he was delinquent on his obligations to the Association. *See,* Doc. 45 at ¶110, ¶112, and ¶123.

### a) As pleaded, the allegations of payment of attorneys' fees likely created jurisdiction.

While it is well-established that a plaintiff cannot create Article III jurisdiction solely by paying a lawyer to sue the defendant and claiming those fees as a "concrete injury,"[4] the question of whether fees paid to an attorney for services related to challenging a claimed debt can create standing hasn't been answered by the Eleventh Circuit. Some federal courts have recognized that paying counsel to respond to a debt collection letter or lawsuit is sufficient to create Article III jurisdiction in an FDCPA case. *See*, *e.g., Maxwell v. Adams*, 4:20-CV-01033-

---

[4] *See*, *Steel Co. vs. Citizens for a Better Environment,* 523 U.S. 83, 107 (1998) ("Obviously … a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.") In its Order, this court, citing *Steel,* agreed with the Defendants' argument, while noting that the Plaintiff "concedes … that fees and costs incurred in litigation do not create standing." *See*, Doc. 191 at p. 16.

LPR, 2021 WL 4392276, at *2 (E.D. Ark. Sept. 24, 2021) ("…the payment of attorneys' fees to retain counsel can constitute support a finding of standing if the attorney is retained to object to the amount of debt owed or the validity of a debt.") While there is no binding precedent on this issue, the Eleventh Circuit has ruled: "Economic harm is the epitome of a concrete injury." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019).

Although it wasn't published until after the Defendants decided against filing a facial attack, Judge Morales Howard's decision in *Davis v. Portfolio Recovery Associates*—a closely analogous FDCPA case—further supports the Defendants' decision not to launch a facial attack on the Amended Complaint. There, the plaintiff filed a complaint claiming the defendant violated the FDCPA by sending a collection letter on a time-barred debt. *Id.*, 2021 WL 4133733 at *1 (September 10, 2021). The complaint alleged: "the Letter and its contents 'unduly inconvenienced' him and caused him to spend time consulting with his attorneys." *Id.* Judge Howard rejected the defendant's facial attack on jurisdiction, stating:

> Although Davis' Complaint is not a model for pleading an injury in fact, given the Eleventh Circuit's comments in Trichell, the Court concludes, ***at this stage of the proceeding***, that Davis has carried his burden of asserting a concrete and particularized injury by way of his allegations that PRA's Letter caused him ***to spend time consulting with his attorneys and to incur monetary losses***.

*Id.* 2021 WL 4133733, at *6 (emphasis added).

*Davis* buttresses the Defendants' argument that a facial attack on the Amended Complaint may well have been fruitless.[5] Because the Plaintiff's Amended Complaint ambiguously claimed that he had "expended … money … retaining and working with counsel

---

[5] Even if the court dismissed the Amended Complaint for lack of jurisdiction, the court may have given leave to amend. While the Defendants do not believe a court can find it lacks subject matter jurisdiction due to the plaintiff's failure to allege sufficient facts of harm and nonetheless grant leave to amend (*See, Steel Co.*, 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause."), the Eleventh Circuit has not specifically ruled on this legal issue.

and their expert witness, researching and gathering documents and trying to identify the Defendants' accounting errors" (*see*, Doc. 45 at ¶¶ 122, 123), it was unclear whether the Plaintiff had paid money to attorneys for non-litigation advice and services or simply to file the instant lawsuit. It therefore made little or no sense for the Defendants to file a motion to dismiss for lack of jurisdiction directed at the Amended Complaint.[6]

In its later-filed "factual attack" on jurisdiction, discovery allowed the Defendants to provide *evidence* that the fees the Plaintiff paid his attorneys were for the purpose of suing the Defendants. After analyzing that evidence, the court correctly determined the attorneys' fees allegedly paid did not "confer standing under Article III" because the *evidence* showed those fees were incurred to litigate this case. *See*, Doc. 191 at p. 7.

### b) The allegations of "wasted time" may have been sufficient to create jurisdiction.

The Amended Complaint also contained allegations of "wasted time" due to the Defendants' actions. The Eleventh Circuit has recognized that "allegations of wasted time *can* state a concrete harm for standing purposes." *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) (emphasis added). Given that precedent, it was, at least possible that the *allegations* in the Amended Complaint that the Plaintiff "***expended time***, money and effort, by retaining and working with counsel" would have withstood a "facial attack."

In its Order dismissing the case for lack of jurisdiction the court relied on *evidence*— including Plaintiff's own declaration offered in opposition to the Defendant Motion to Dismiss— to find the claimed harm of "wasted time" did not create jurisdiction.

The Defendants decision to forgo a facial attack was therefore not only reasonable, but

---

[6] There are also more specific reasons the Defendants chose not to challenge standing at the initial pleadings stage. But because the Plaintiff has filed an appeal, the case remains pending. The defense should therefore not be required to disclose in detail its litigation strategy/work product.

prudent. It is also fair to speculate that an unsuccessful facial attack on jurisdiction may very well have "impacted" the Plaintiff's subsequent deposition testimony and damaged the Defendants' ability to make a successful factual attack on jurisdiction later in the case.

The Plaintiff's theory that any "reasonable attorney" would have "challenged standing" when "the Amended Complaint [was] served on January 8, 2021" (*see*, Doc. 207 at p. 11) is therefore simply wrong. Even if one *could* make the argument that a facial attack on the Amended Complaint was a reasonable choice, an equally plausible—and stronger—argument exists that doing so would have resulted in a denial of the motion to dismiss thereby creating further motion practice on the issue once evidence was available.

The concept of 20/20 hindsight is ever-present in litigation. But "[b]efore the Court may impose sanctions, it must determine by clear and convincing evidence that a litigant or counsel have acted in bad faith." *See, Allen v. Robert F. DeLuca, M.D., P.A.*, 2019 WL 5578100, at \*2 (S.D. Fla. Oct. 29, 2019). The Plaintiff has offered no evidence of "bad faith", only supposition. And he has entirely failed to argue the Defendants had any motive to needlessly prolong the case. No motive existed, especially since the Defendants were being billed hourly for counsel's time.[7]

Instead, as demonstrated above, the evidence shows defense counsel made a "good faith tactical decision" not to facially attack jurisdiction when the Amended Complaint was filed. For this reason and the reasons detailed in the prior paragraphs, there is no basis for the court to conclude that the Defendants and their counsel violated § 1927 by deciding not to "challenge standing" when "the Amended Complaint [was] served on January 8, 2021," as Plaintiff argues defense counsel was required to do to avoid vexatiously litigating the case.

---

[7] Here, Plaintiff's arguments that the Defendants are also lawyers serves only to undermine any claim that the decision not to make a facial attack on standing was designed to increase the fees paid to defense counsel.

2. **The Plaintiff has taken contradictory positions in this case, arguing now that the Defendants' failure to file motions earlier prolonged the litigation, after arguing earlier that the Defendants' motions on jurisdiction and the § 1692c(b) claim were so frivolous as to warrant sanctions.**

In *Peterson v. BMI Refractories*, the Eleventh Circuit held that "even unreasonable and vexatious conduct [] is not sanctionable unless it results in proceedings that would not have been conducted otherwise." *Id.*, 124 F.3d 1386, 1396 (11th Cir. 1997). Because the Plaintiff alleges the Defendants engaged in "unreasonable and vexatious conduct" by *not* filing motions to dismiss when the Amended Complaint was filed, it follows that he must necessarily prove that had those motions been filed, the case would have ended without further proceedings.

Implicit in the arguments in Plaintiff's Motion is therefore an admission that the court in fact lacked subject matter jurisdiction and that his § 1692c(b) claim was meritless. But that implication is utterly paradoxical to the positions the Plaintiff took when confronted with Defendants' motions raising the jurisdictional issue and arguing the § 1692c(b) claim was objectively frivolous. And because his position in the Motion at bar is incompatible with the positions the Plaintiff took when confronted with the same legal argument earlier in the case, the Plaintiff is subject to judicial estoppel, which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner v. United States*, 547 U.S. 489, 504 (2006).

The Plaintiff strenuously opposed the Defendants' Motion to Dismiss for Lack of Jurisdiction and likewise opposed the Rule 11 motion directed at the § 1692c(b) claim. Yet he now takes the contrary position arguing that the Defendants' failure to file motions to dismiss directed at the Amended Complaint "rendered a waste of this Court's and the parties' resources expended between mid-January and November 2021." *See*, Doc. 207 at p. 6. But, as indicated above, that assertion is true *only if* filing the motions in "mid-January" would have ended the

case. Yet the history of the case conclusively demonstrates that the litigation would have proceeded even if the Defendants filed the motions in January 2021 and the court granted both.[8] When the Defendants filed the jurisdictional motion and later, the Rule 11 motion directed at the § 1692c(b) claim, the Plaintiff vociferously opposed both and in fact sought attorneys' fees for being forced to respond. *See*, Doc. 158 at p. 20 (requesting the court "award[] Plaintiff his attorneys fees and costs incurred in responding to the Motion."); Doc. 203 at p. 8 ("Toste is entitled to, and requests, his attorneys' fees.").[9] And he has now appealed the court's ruling dismissing the case for lack of jurisdiction.[10] It is therefore fair to conclude that had the court dismissed the § 1692c(b) claim, the Plaintiff may have appealed that ruling, as well. And if successful, the case would resume its posture as of the filing of the Amended Complaint in January 2021—only the parties would have wasted time and resources litigating an appeal that would have potentially taken a year or more to resolve. It is therefore clear that the Defendants purported failure to file motions to dismiss directed at the Amended Complaint did *not* "render[] a waste all of this Court's and the parties' resources expended between mid-January and November 2021" as the Plaintiff claims.

In *Peterson*, the Eleventh Circuit reversed the district court's determination that the plaintiff's counsel violated § 1927, stating:

> the issue before us is not whether Fisher could and should have

---

[8] This argument assumes, *arguendo*, the court could have determined it lacked jurisdiction and still ruled that the § 1692c(b) claim was fatally flawed. In reality, once the court determined it lacked jurisdiction, it was powerless to do anything other than dismiss the case without prejudice. *See, Steel Co.*, 523 U.S. at 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

[9] The court refused the Plaintiff's request for attorneys' fees under Rule 11(c) incurred responding to the Defendants' Rule 11 Motion. He now seeks the same fees under § 1927. But § 1927 permits fees only "for conduct 'more egregious' than behavior sanctionable under Rule 11." *See, Cont'l Cas. Co. v. McCabe Trotter & Beverly, P.C.*, 2021 WL 3811383, at *4 (D.S.C. Aug. 26, 2021).

[10] The irony here is that if the appeal is successful, then this motion is frivolous and if the appeal is not successful, it is frivolous based on the arguments made in the motion at bar.

> done differently than he did. The issue before us is whether his
> conduct is sanctionable under 28 U.S.C. § 1927. That section is not
> a "catch all" provision designed to serve as a basis for sanctioning
> any and all attorney conduct courts want to discourage. Instead, §
> 1927 applies only to conduct that "multiplies the proceedings in
> any case unreasonably and vexatiously.

*Id.*, 124 F.3d 1396.

Perhaps it *could* be argued that the Defendants should have "done differently" as the

Plaintiff claims. But the Defendants have demonstrated that taking the course of action the

Plaintiff claims the Defendants were required to take in order to avoid violating § 1927 would

have been fraught with peril for the Defendants. And more importantly for purposes of the

motion at bar, Plaintiff has not and cannot prove that the Defendants' failure to file the motion to

dismiss for lack of jurisdiction and partial motion to dismiss the § 1692c(b) claim in response to

the Amended Complaint—making arguments the Plaintiff's believes were insufficient to permit

the court to grant either motion—"result[ed] in proceedings that would not have been conducted

otherwise." *See*, *Peterson*, supra.

3. **The Plaintiff's Motion contains assertions that are unsupported by the record or, in fact, contradicted by the record.**

In *McKnight v. Benitez*, Judge James Moody lamented what he called "the lure of

attorney's fees" that FDCPA claims offer, noting that "[e]ven in cases with nominal or no

damages, technical violations give rise to full attorney's fees creating a well-spring of litigation

to 'vindicate' non-existent harms." *Id.*, 176 F. Supp. 2d 1301, 1306 (M.D. Fla. 2001). In this

case, the court determined the Plaintiff was not "harmed" (in the Article III sense) by the

Defendants. That ruling resulted in the dismissal of the case and deprived Plaintiff's counsel of

the possibility of recovering prevailing party attorneys' fees. The Motion at bar seems designed

to "remedy" that result by denigrating defense counsel—going so far as to characterize the

defense of this case "particularly reprehensible." *See*, Doc. 207 at p. 2. But in their zeal to extract

their "pound of flesh", the Plaintiff's attorneys have included in their brief statements that are

nothing but supposition, find no support in the record or, in fact, contradict the record. What

follows are several examples of these types of baseless assertions designed to unfairly prejudice

the Defendants and their counsel.

> (i)    *"The delay in raising the standing challenge also required the Court to resolve the standing issue before proceeding with the second round of summary judgment motions, and resulted in yet another continuance of the trial date."*

Doc. 207 at p. 7.

This statement fails to accurately reflect the Order referenced—DE 142—in which the

court ruled:

> that in order to adjudicate Defendants pending Motion for Summary Judgment, it would be a benefit to the Court to reopen the pretrial motion deadline and allow Defendants to file an updated Motion for Summary Judgment that reflects whether Defendants are debt collectors under the FDCPA based upon any new information that was gathered through discovery. The Court finds that in order to allow for the reopening of the pretrial motion deadline, a continuance of the trial date is necessary.

*See*, Doc. 142.

The Defendants' Motion to Dismiss was, as the court noted, merely "*another factor* that

weighs in favor of a continuance of trial." *Ibid.* (emphasis added). It was not, as the Plaintiff

implies, the primary reason for the continuance. And the idea that the Plaintiff was eager to get

the case to trial rings hollow in light of the fact that the Plaintiff *twice* requested the trial date be

continued *after* the aforementioned Order was entered. *See*, Doc. 144, 189.

> (ii)   *The Plaintiff claims the Defendants employed "vexatious tactics" in responding to the Plaintiff's discovery requests yet admits "the Court sustained many of [Defendants' discovery] objections.*"

*See*, Doc. 207 at p. 9.

Magistrate Judge Becerra, in fact, sustained not "many" but an overwhelming majority of the Defendants' objections. Her discovery Order reveals that she not only limited the temporal scope of discovery to less than what the Plaintiff sought, but fully sustained the Defendant Law Firm's objections to 18 of the 27 document requests and all but one objection to the Plaintiff's interrogatories—another objection was granted in part. *See*, Doc. 130.[11] As for Arriola's and Shapiro's discovery objections, the Magistrate sustained all but two. *Ibid.* The Plaintiff's claim is therefore contrary to the record.

Plus, the issue of purported discovery abuses was litigated earlier when the Plaintiff filed her Motion for Reopening Limited Discovery (Doc. 144). And its Order denying that Motion, the court noted: "Plaintiff also rehashes several discovery issues that transpired in proceedings before Magistrate Judge Jacqueline Becerra" and ultimately denied the Motion, stating: "Plaintiffs were granted a rare second bite at the apple when the Court reopened discovery on this issue, and Plaintiffs have not shown good cause for the Court to do so again." *See,* Doc. 160.

(iii)    *"As it turned out, what Defendants were deliberately attempting to withhold were 371 pages of notices of intent to lien [DE 174-5], 311 pages of notices of intent to foreclose [DE 174-7], 217 pages of foreclosure complaints [DE 174-8, 174-9] and 217 pages of claims of lien [DE 174-6] which constitute damaging evidence regarding their debt collector defense."*

*See,* Doc. 207 at p. 10.

There is not a shred of evidence that the "Defendants were deliberately attempting to withhold" any *discoverable* documents. And the Plaintiff cites none. Plus, the concept that the Defendants could "attempt to withhold" documents that had already been filed in the public

---

[11] Plaintiff also implies the Defendants withheld documents on the basis of "privilege" yet improperly failed to provide a privilege log. *Ibid.* Plaintiff failed to raise this issue at the discovery hearing and shouldn't be heard to complain now.

record and published on the Miami-Dade Clerk of the Court's website *i.e.*, foreclosure

complaints and claims of liens, is nonsensical. As demonstrated by the transcript of the discovery

hearing, the Defendants were trying only to limit the scope of discovery to what defense counsel

believed was permissible under the discovery rules. *See*, Doc. 144-6. And Magistrate's Becerra's

Order demonstrates that the Defendants were—in large part—successful, meaning she agreed

that most of the Plaintiff's discovery requests were improper. *See*, Doc. 130.

> (iv)   "*Defendants and their counsel advised Toste he could not use the notices of intent to lien [DE 174-5], notices of intent to foreclose [DE 174-7], foreclosure complaints [DE 174-8, 174-9] and claims of lien [DE 174-6] produced because they were confidential.*"

*Ibid.*

Plaintiff again cites nothing in the record supporting this accusation. And, in fact, defense

counsel's September 21, 2021 email to Plaintiff's counsel (*See,* Ex. 1) demonstrates the

inaccuracy of the Plaintiff's assertion. The Defendants' main concern centered on the initial

"Notice of Intent to Lien" letters sent to property owners. Those letters—unlike foreclosure

complaint and claims of lien, along with the letters attached as exhibits—were not public

documents and contained names and addresses of and amounts allegedly owed by unit owners.[12]

Defendants believed those documents shouldn't be published on the docket.

On October 1, 2021, the Plaintiff filed his Expedited Motion to File Document under

Seal, in which he acknowledged he hadn't conferred with defense counsel. *See*, Doc. 169 at p. 4.

And he also filed responses to the Defendants' motions for summary judgment. *See*, Doc. 163,

165, 167. The next day, upon reviewing certain exhibits the Plaintiff was relying on to support

his opposition to the Defendants' summary judgment motion and the court's Order containing a

---

[12] The Defendant Law Firm was also concerned about financial documents produced to the Plaintiff. But there was no indication that the Plaintiff intended to either file those documents with the court or distribute them publicly.

preliminary indication that "the Court has no reason to require that these documents be sealed given the public interest that favors access to judicial proceedings" the Defendants determined the confidentiality issue wasn't worth litigating and informed Plaintiff's counsel of that decision. One important factor in this decision was that, in apparent agreement with Defendants' position on the issue of confidentiality—at least in part, the Plaintiff had redacted the names of property owners on the Notice of Intent letters he emailed defense counsel on October 1, 2021, and ultimately filed with the court. *See*, e.g., Doc. 174-5.

      (v)      *"...this [was] standard FDCPA case [that] should have been quickly and inexpensively resolved at inception."*

*See,* Doc. 207 at p. 5.

In this "standard FDCPA case," the ***31-page*** Amended Complaint filed by Plaintiff's counsel contained ***168*** numbered paragraphs. The Amended Complaint is anything but "standard" for an FDCPA case. And every settlement requires compromise. The Plaintiff had every right to make demands to settle the case, and the Defendants had an equal right to reject those demands. Plus, FDCPA litigation can become "death by a thousand papercuts" for some defendants, who are often faced with lawsuit after lawsuit by the same consumer attorneys. Attorneys Vilarello and Hernandez have targeted the instant Defendants multiple times. This too impacts the ability to resolve cases quickly because defendants often fear settling one questionable case with an attorney will only lead to more complaints.

**4. The Plaintiff carelessly and needlessly multiplied the proceedings by flippantly scheduling, canceling, rescheduling, and re-cancelling depositions in September and filing multiple redundant motions.**

The Plaintiff falsely claims that it was the Defendants and their counsel who engaged in misconduct that needlessly multiplied the proceedings. Yet he fails acknowledge his own reckless conduct that created havoc with the schedules of the Defendant lawyers and defense

counsel and caused the Defendants to needlessly incur attorneys' fees and expenses.

When the court reopened the discovery period August 2021, Plaintiff requested second depositions of each of the three (3) Defendants.[13] Yet, after subjecting each Defendant (and counsel) to seemingly non-stop scheduling, canceling, and rescheduling the depositions, Plaintiff never took a second deposition of any of the Defendants.

On August 13, 2021, Plaintiff scheduled Arriola's deposition for September 22, 2021.[14] On September 13, 2021, Plaintiff rescheduled Arriola's second deposition to September 17, 2021. On September 17, 2021, Plaintiff canceled Arriola's rescheduled second deposition, at Arriola's request. Plaintiff then re-set Arriola's second deposition to occur September 28, 2021. On September 27, 2021, Plaintiff again canceled Arriola's deposition. Plaintiff never took a second deposition of Arriola.

On August 13, 2021, Plaintiff scheduled Shapiro's deposition to occur on September 22, 2021. On September 21, 2021, Plaintiff canceled Shapiro's second deposition. Plaintiff then re-set Shapiro's second deposition for September 28, 2021. On September 27, 2021, Plaintiff canceled Shapiro's rescheduled second deposition. Plaintiff never took a second deposition of Shapiro.

On August 24, 2021, Plaintiff scheduled the Defendant Law Firm's deposition for September 23, 2021. On September 22, 2021, Plaintiff canceled the Firm's second deposition. On September 30, 2021, Plaintiff re-noticed the Firm's second deposition for the same date, September 30, 2021. On September 30, 2021, Plaintiff canceled the Firm's rescheduled second

---

[13] The court is certainly aware that satisfying a deposition request implicates multiple persons' scheduling calendars and consumes the time of not only the lawyers in the case and the witnesses, but the lawyers' respective legal assistants, support staff, and the court reporter(s).

[14] The Defendants have not attached copies of the notice of deposition nor the notices of cancellations, which number around two (2) dozen. Should the Plaintiff dispute the Defendants' recitation of the proceedings, the Defendants will certainly provide the court copies of all the notices, should the court require them.

deposition. Plaintiff never took a second deposition of the Firm.

Plaintiff employed the same tactic with respect to non-party depositions, scheduling depositions only to cancel, reschedule, and cancel again. On August 26, 2021, for example, Plaintiff scheduled the deposition of non-party Firm employee Carolina Berlin for September 9, 2021. On September 7, 2021, Plaintiff rescheduled the deposition for September 13, 2021. On September 10, 2021, Plaintiff canceled Ms. Berlin's deposition. Plaintiff never took the deposition of Ms. Berlin.

On September 10, 2021, Plaintiff scheduled the deposition of non-party attorney Michael Spoliansky to occur on September 21, 2021. On September 21, 2021, Plaintiff rescheduled attorney Spoliansky's deposition for September 23, 2021. On September 22, 2021, Plaintiff canceled attorney Spoliansky's rescheduled deposition. Plaintiff never took the deposition of attorney Spoliansky.

On September 10, 2021, Plaintiff scheduled the deposition of non-party attorney Michael Cotzen to occur on September 21, 2021. On September 21, 2021, Plaintiff rescheduled attorney Cotzen's deposition for September 24, 2021. On September 22, 2021, Plaintiff canceled attorney Cotzen's rescheduled deposition. Plaintiff never took the deposition of attorney Cotzen.

Plaintiff also scheduled a second deposition of Roberto Pons, the accountant for the since-dismissed co-Defendant Association to occur on September 22, 2021. Plaintiff canceled and then, rescheduled Mr. Pons' Second Deposition to occur on October 4, 2021, but canceled again, and never took a second deposition of Mr. Pons.

On August 16, 2021, Plaintiff served seven (7) non-party subpoenas on various condo associations setting depositions to occur at 10:00am, 1:00pm, and 3:00pm on August 30, 2021. But Plaintiff served those subpoenas on the associations, without first serving them on

Defendants as required by Fed. R. Civ. P. 45. Nor did the Plaintiff attempt to clear the deposition date/times with defense counsel.

The Plaintiff ultimately canceled the August 30, 2021, depositions. But on September 15, 2021, Plaintiff rescheduled the Association depositions and emailed seven (7) Notices of Taking Deposition Duces Tecum to Defendants' counsel setting the depositions for September 20, 2021, at 10:00am, 10:30am, 11:00am, 11:30am, 12:00pm, 12:30pm, and 1:00pm. Each Notice reflected, "[t]his date was coordinated with counsel for Association's counsel."

On September 20, 2021, defense counsel attended each of the seven (7) scheduled depositions, yet *not one* of the seven (7) non-party Associations appeared for deposition due to Plaintiff's failure to take the necessary steps to secure the witnesses' attendance. Plaintiff's counsel ultimately admitted that the extent of counsel's "coordinat[ion]" of these depositions consisted of simply emailing the seven (7) Notices to Defendants' counsel and the Defendant Law Firm, neither of whom represented *any* of the subpoenaed associations in this case.

On August 26, 2021, Plaintiff scheduled the deposition of non-party Firm employee Nina Vidal to occur on September 21, 2021. Ms. Vidal "agreed to voluntarily produce herself for [the] deposition." Plaintiff then canceled Ms. Vidal's deposition. On September 29, 2021, Plaintiff's re-set Ms. Vidal's deposition for September 30, 2021, and took the deposition.

Plaintiff then filed his Expedited Motion for Reopening of Limited Discovery claiming Ms. Vidal's "involvement in the Firm's debt collection practice… [first became] obvious" to Plaintiff at her deposition and seeking another discovery extension and a continuation of the trial date. *See,* Doc. 144 at p. 2. But Plaintiff filed this lawsuit over a year earlier alleging violations based on a Notice of Intent, attached to Plaintiff's Complaint as an exhibit, which was *signed by Ms. Vidal. See*, Doc. 1 at ¶¶ 70-80; Doc. 1-7. And the court rightly rejected the Plaintiff's

argument, summarizing the Motion as follows:

> Plaintiff has raised a myriad of complaints about Defendants
> purported attempts to conceal the job function of Ms. Wizzard, and
> two other employees, from Plaintiff. Yet, Plaintiff admits that
> Defendants Shapiro and Arriola testified about Ms. Vidal's role in
> lien foreclosure during their depositions in May of 2021. [144] at
> 11. Plaintiff also notes that Ms. Vidal has the same job description
> as the three employees whose depositions Plaintiff seeks to obtain.
> Id. at 2 (Ms. Vidal's job title and description is identical to Ms.
> Wizzard's, as are two additional employees.). Thus, Plaintiff
> would have the Court reopen discovery, for a third time, because
> Plaintiff did not appreciate that other employees, who have the
> same job description as an employee who is known to have
> relevant information, would potentially be relevant. The Court will
> do no such thing.

*See*, Doc. 160.

The court a noted: "Plaintiff also rehashes several discovery issues that transpired in proceedings before Magistrate Judge Jacqueline Becerra." *Ibid.* But that wasn't the only groundless motion the Plaintiff pursued. After being rebuked by the court, the Plaintiff boldly filed another motion on November 12, 2021, again requesting the court continue the trial rehashing certain arguments made in the Expedited Motion for Reopening of Limited Discovery about conflicting trial dates and pre-paid family vacations. *See*, Doc. 189, *compare*, Doc. 144. The only reason the Defendants weren't required to incur more attorneys' fees to respond, and the court didn't have to spend additional time ruling on that Motion was the court's dismissal of the case for lack of jurisdiction a few days later. *See*, DE 191.

### IV. Conclusion.

The plaintiff has failed to prove by clear and convincing evidence that the Defendants "unreasonably and vexatiously" multiplied the proceedings. In fact, his steadfast belief that the court wrongfully dismissed the case and that his §1692c(b) is sound guts his argument that had Defendants filed motions directed at those issues, the case would have ended. Hindsight criticism

doesn't prove "bad faith." The Motion should be denied.

Dated:  January 31, 2022

/s/ Dale T. Golden
Dale T. Golden, Esq.
FBN:  0094080
**GOLDEN SCAZ GAGAIN, PLLC**
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone:  (813) 251-5500
Direct:  (813) 251-3632
Fax:  (813) 251-3675
dgolden@gsgfirm.com