UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI – CIVIL DIVISION
CASE NO. 1:20-cv-23771-KMM

Segundo Toste, individually,

        Plaintiff,

v.

The Beach Club at Fontainebleau Condominium Association, Inc., a Florida corporation, Russell S. Jacobs, P.A., a Florida corporation, a/k/a The Jacobs Law Group, Pablo A. Arriola, individually, and Scott R. Shapiro, individually,

        Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO §1927 AND THE COURT'S INHERENT POWERS**

Plaintiff, Segundo Toste ("Toste"), pursuant to 28 U.S.C. §1927 and his invocation of the Court's inherent powers to impose sanctions, and in compliance with Local Rule 7.1, hereby files his Reply to Defendants' Response to Plaintiff's Motion for Sanctions Pursuant to § 1927 and the Court's Inherent Powers (the "Response"). Doc. 212.[1] In support thereof, Toste states as follows:

---

[1] The Response is filed on behalf of Defendants, who were identified in Toste's Motion for Sanctions Pursuant to § 1927 and the Court's Inherent Powers (the "Motion") as Russell S. Jacobs, P.A. (the "Firm"), Pablo A. Arriola ("Arriola"), Scott R. Shapiro ("Shapiro") (collectively "Defendants"). Doc. 207, p. 1. The Motion was also brought against Russell S. Jacobs ("Jacobs"), Dale Golden ("Golden"), and Golden Scaz & Gagain, P.A. ("Golden Firm"). Doc. 207 p.1, *generally*. Jacobs, Golden and the Golden Firm were not defendants in this case. No Response to the Motion was filed on their behalf. While Defendants do mention "their counsel" generally, the Response nowhere states it is being filed on behalf of Jacobs, Golden and the Golden Firm. The Motion is therefore undisputed by Jacobs, Golden and the Golden Firm. Such failure to respond provides a sufficient basis for this Court to grant the Motion by default as to Jacobs, Golden and the Golden Firm. *See L.R. S.D. Fla.* 7.1(c)(1): For all motions…each party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default."

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants now suggest the Court had jurisdiction because they are facing sanctions, ignore the bad faith behind their defense strategy, arbitrarily reframe Toste's arguments, and attempt to distract this Court from their actions which create the basis for the sanctions sought.

Their most striking announcement is that, in order to avoid sanctions, ***Defendants now assert the Court may have had jurisdiction***. They are judicially estopped from taking that position and it is just another example of their "playing fast and loose with the courts."[2]

Perhaps the most significant concession is ***the lack of any dispute that the facts necessary to challenge standing were present in the Amended Complaint***: not only did Defendants know at the time the facts as alleged addressed Article III standing, they knew they could have lost a standing challenge had they raised it upon service. Doc. 212 pp. 4-5. So they made the deliberate decision to withhold the case-dispositive standing challenge until the eve of trial, instead pursuing full throttle litigation against Plaintiff's claims, including the §1692c(b) claim.[3]

This Court, *sua sponte,* first noted the late timing of the standing challenge when it ordered the parties to a second mediation: "Recently, the Law Firm Defendants have filed a Motion to Dismiss, which challenges the Court's jurisdiction based on case law and facts available to the Law Firm Defendants for several months, if not over a year." Doc. 146. The Court again pointed

---

Similarly, only the Firm, Arriola and Shapiro filed a Notice of Non-Opposition to Plaintiff's Motion to Bifurcate the Issue of Entitlement and Reasonableness of Attorneys' Fees and Costs Award. Doc. 211; Doc. 206. Thus, that motion is also properly granted by default as to Jacobs, Golden and the Golden Firm.

[2] *See New Hampshire v. Maine*, 532 U.S. 749-750 (2001) and cases cited therein, noting the "doctrine is intended to prevent the perversion of the judicial process."

[3] This Court already *sua sponte* recognized that the jurisdictional challenge was based on case law and facts that had been available to Defendants for several months, if not over a year. Doc. 146.

out Defendants' late timing in its order denying Defendants' Rule 11 Motions, rejecting their attempts to distinguish *Peer*, explaining the Court never reached the issue of dismissal of the Complaint on the grounds raised in the Rule 11 Motion "because Defendants injected a jurisdictional challenge into this case until after the pretrial motion deadline had closed, therefore requiring the Court to rule on the jurisdictional issue first. Defendants' self-serving gamesmanship does not excuse their failure to raise these issues earlier in the case." Doc. 205.

Defendants intentionally allowed the case to proceed unfettered, as if it were undisputed that Toste had standing, as if they had asserted a debt collector defense, and as if they had no defense to Count III.[4] Such conduct throughout the case as a defense strategy was vexatious and unnecessarily and unreasonably multiplied the proceedings, and was pursued in bad faith to punish the Toste's counsel who has repeatedly sued Defendants for similar violations in the past. Unfortunately for Defendants, that strategy also punished third parties and this Court. Such actions render sanctions appropriate under both §1927 and the Court's inherent powers.

**I.      Defendants' Claim that Jurisdiction Likely Existed is Barred by Judicial Estoppel.**

Defendants now assert that the allegations of payment of attorneys' fees and wasted time likely created jurisdiction. Doc. 212 pp. 5-6. Because they raised the opposite argument in their

---

[4] Defendants did not dispute the facts alleged in the Amended Complaint as to Count III in their first summary judgment motion [Doc. 79-1 ¶¶ 7-8], but waited until summary judgment to raise their Count III challenge [Doc. 152; Doc. 154; Doc. 153 ¶2; Doc. 155 ¶3] and never produced any evidence to challenge Toste's expert's analysis that the amounts on the face of that lien were false and misrepresented the amounts Toste owed. Doc. 81-13.

While Defendants are correct that a partial motion to dismiss directed to only one count, Count III, would not dispose of the entire case [Doc. 212 p.3], that's not what Defendants ultimately filed: they filed a motion to dismiss for lack of Article III jurisdiction which encompassed the entire Amended Complaint. Doc. 140. That all encompassing motion is what Toste asserts should have been filed following service of the Amended Complaint [Doc. 207], despite Defendants' attempt in their Response to confuse the issue.

Motion to Dismiss in October 2021 [Doc. 140 p. 14], they are now judicially estopped from arguing the jurisdiction exists in an attempt to avoid sanctions. *New Hampshire*, 532 U.S. at 750-751 ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." …. This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citations omitted).

Defendants go on to argue that if they had filed a "facial attack" of the Amended Complaint challenging standing, it would likely have been denied. Doc. 212 pp. 2-3. But there was only one way to know that: **file it**. Had they done so and been denied, the case would have been tried and they could appeal the standing ruling if they lost at trial. If granted, as it was here, and the case dismissed for lack of jurisdiction, then the case would be where it is today: on appeal, but minus the inordinate waste of time, work, expenses, and resources resulting from the full scale litigation war Defendants decided to put the parties, witnesses and this Court through unnecessarily.

Defendants next claim that by launching their "factual attack" on jurisdiction nine (9) months after the Amended Complaint, they were able to provide the Court with evidence that the attorneys' fees were incurred to litigate this case[5] and therefore insufficient to establish an Article III injury. Doc. 212 p.7. But that "evidence" (Toste's deposition testimony [Doc. 81-1]) simply restated the allegations of the Amended Complaint [Doc. 45 ¶126] and was in their hands in May

---

[5] A Rule 12(b)(1) motion after service of the Amended Complaint could have attacked standing allegations. A Rule 12(e) motion arguing the allegations regarding the fees paid were unclear [Doc. 212 p. 11] could have resolved the issue by amendment to the complaint. (Indeed, a good faith conference before filing that motion could have resolved it without judicial intervention).

2021– five months before the Motion to Dismiss was filed in October 2021. Doc. 140.

Moreover, on a 12(b)(1) facial attack the Court is required to accept all of the allegations of the Amended Complaint as true at the motion to dismiss stage. *See Dapeer v. Neutrogena Corp.*, 95 F.Supp 3d 1366, 1372 (S.D. Fla. 2015) ("[f]acial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.") It was incumbent on Defendants, as officers of this court, to challenge Toste's alleged standing in a facial attack, if there was a basis, in order to ensure that the system of justice would function smoothly.[6] For the same reasons, Defendants also did not need evidence to argue "wasted time" resulting from their actions did not create an Article III injury. Doc. 212 pp. 7-8. See *Malautea*, 987 F.2d at 1536.[7]

## II. Toste Offered Evidence of Bad Faith and a Motive to Prolong the Case Which Defendants Conceded Existed: Payback for Prior Lawsuits Brought Against Them.

Defendants claim Toste offered no evidence of bad faith and failed to argue that Defendants had a motive to prolong the case. Doc. 212 p. 8. Neither statement is true. Not only did Toste identify the motive for delaying or disrupting the litigation ("…the only explanation for this tactic was that it was intended to harass Toste and his counsel, who have previously sued the Firm in other instances for FDCPA and FCCPA violations." [Doc. 207 p. 11]), but Defendants' statements suggest Toste was right on target [Doc. 212 p. 15]:

---

[6] Association's counsel did as much upon service. Doc. 50.

[7] Defendants' "speculat[ion] that an unsuccessful facial attack on jurisdiction may very well have 'impacted' the Plaintiff's subsequent deposition testimony and damaged Defendants' ability to make a successful factual attack on jurisdiction later in this case" speaks volumes. Not only is there absolutely no basis whatsoever in the record to suggest that Toste or his counsel would in any way "impact" sworn deposition testimony, but Defendants' statement reveals that their defense strategy was, from inception, to hold the jurisdiction card until late in the case.

> …FDCPA litigation can become 'death by a thousand papercuts for some defendants, who are often faced with lawsuit after lawsuit by the same consumer attorneys. Attorneys Vilarello and Hernandez have targeted the instant Defendants multiple times. This too impacts the ability to resolve cases quickly because defendants often fear settling one questionable case with an attorney will only lead to more complaints.'"

As a punishment to those who would challenge them, Defendants purposely withheld the debt collector defense, the standing challenge and the challenge to the §1692c(b) claim and let Toste pursue his claims until trial was imminent and summary judgment motions were due (twice).

As argued in the Motion, the defense tactic of deliberately withholding a case dispositive standing challenge until the eve of trial and engaging in full blown litigation until that point, while having the alleged facts needed to challenge standing since at least January 2021, is unquestionably bad faith.[8] Doc. 207 pp. 5-8, 11-12, 17-18.  Defendants have failed to provide this Court with any explanation for their delay in challenging standing following service of the Amended Complaint, other than to now claim jurisdiction may have existed and maybe they would have lost.  But that is insufficient, for the reasons previously discussed.

Nor is this a case of mere negligence.[9] Defendants have at length conceded they knew that the Complaint was amended to address the Article III standing issue. Doc. 212 pp. 9-11. Their

---

[8] Defendants raise a collateral issue, whether Defendants, Jacobs, Golden and/or the Golden Firm are potentially subject to legal malpractice liability, which is not before this Court. Doc. 212 n.2. For that reason, while Toste disagrees that course of conduct engaged in by Defendants, Jacobs, Golden and the Firm was pursued in "good faith," no further response is required at this point.

[9] *Orenshteyn v. Citrix Sys., Inc.*, 2010 WL 11442695 at *5-7 (S.D. Fla. Oct. 1, 2020) ("a district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings."… An attorney's conduct, however, "must be particularly egregious to warrant the imposition of sanctions—the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." … Mere negligence will not suffice—that is, "an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney.") (citations omitted).

6

Response describes their detailed analysis of the standing allegations of the Amended Complaint as to payment of attorneys' fees and wasted time. *Id*. This is a case of a carefully cultivated defense strategy with one end game: at all costs, punish Toste's counsel for suing them repeatedly. Those costs included laying waste to not only Toste's counsel time, expenses and resources from January through November 2021, but this very Court's. Such conduct throughout the course of the case is more than egregious enough to warrant the imposition of sanctions, particularly where Defendants had previously been sanctioned for withholding the debt collector defense. Doc. 109.

This Court has already found the debt collector defense was improperly concealed [Doc. 109] and the §1692c(b) challenge (as well as the *Obduskey* debt collector challenge) made via a Rule 11 Motion filed after dismissal of the case were barred where Defendants waited over a year to raise them. Doc. 205. That deliberate conduct and litigation strategy, coupled with the eleventh hour standing challenge, render sanctions appropriate where these actions were part of their overall gamesmanship in defending the case. *See, e.g., Orenshteyn*, 2010 WL 11442695 at *5-7 (granting sanctions where counsel "'needlessly obstructed the litigation' of this action through their conduct and discovery practices that were tantamount to an elaborate game of Three-Card Monte").

**III.    Defendants Reframe Toste's Arguments to Avoid Addressing Critical Points.**

What makes Defendants' conduct in this litigation "particularly reprehensible" is not just that Defendants failed to pursue certain motions [Doc. 212 p.5] or that their "defense of the case" was particularly reprehensible," although indeed it was. Doc. 212 p.31.

What makes Defendants' conduct "particularly reprehensible" [Doc. 207, p.2] is that Jacobs, the corporate representative of the Firm, Arriola, and Shapiro (and of course Golden) are all attorneys charged with duties of complete candor and primary loyalty to the courts before which they practice.  As attorneys, Jacobs and his Firm, Arriola, Shapiro, Golden and the Golden Firm

each had a responsibility and primary duty to this Court to ensure that the system of justice functions smoothly.[10] That duty was abrogated by each attorney via their willful participation in Golden's and the Golden Firm's litigation strategy of bad faith and abuse of the judicial process.

### IV. The Basis for Sanctions Arises from the Defense Strategy as a Whole, not just from a Particular Motion.

The Motion is not based only on Defendants' failure to file motions to dismiss when the Amended Complaint was filed. Doc. 212 p. 9.[11] The basis for sanctions encompasses Defendants' actions as a whole in allowing the case to proceed to trial. Specifically, it is the day-to-day decision-making employed in bad faith as part of the overall defense litigation strategy to punish his counsel by waging an all out litigation war until the very last moment before raising a standing challenge that had been available from day one which is at the heart of the unreasonable and vexatious conduct resulting in unnecessary multiplication of the proceedings. Doc. 207 p.8.

### V. Toste's Position Remained Consistent Throughout the Litigation, and Continues to be Consistent Today.

Toste's position, is, has been and remains on appeal: this Court had jurisdiction [Doc. 158], and Toste's §1692c(b) claim was well-founded in law. Doc. 203. When Defendants filed their Rule 11 Motion directed to Toste's §1692c(b) claim, Toste responded he was entitled to attorneys' fees and costs under the Rule 11. Doc. 203. Neither of those positions is inconsistent with his position now nor has Toste ever waivered on either one, such that his Motion could be deemed an admission. Doc. 212 pp. 9-11. Instead, while Toste disagrees with the Court's conclusions on

---

[10] *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (1993) (reminding attorneys of their duties to the Court and affirming 1927 sanctions and sanctions under the court's inherent powers.)

[11] Toste did not argue Defendants should have filed a "partial motion to dismiss seeking dismissal of Count III." Doc. 212, p. 3.[11] Count III was referred to as just another example of proceedings which would have been avoided based on the undisputed facts of the Amended Complaint.

jurisdiction, the fact remains that, but for the Defendants' actions, or inaction, the Court could have ruled on standing at the inception of the case, long before the case had made its way through every stage up to trial. Doc. 146, 205.

Finally, Defendants' argument that bringing the motion to dismiss for lack of standing upon service of the Amended Complaint was "fraught with peril" for Defendants [Doc. 212 p.11] is meritless, because if denied, Defendants would have had to litigate and go to trial. That is *exactly* the same position they were in when they filed the Motion to Dismiss in October 2021. So if facing a trial is the situation that was "fraught with peril," then the bad faith defense strategy of employing a "gotcha" tactic based on dragging Toste, his counsel and this Court though a full blown litigation to only raise standing at the last moment becomes more obvious yet, if that is even possible.

**VI.      The Remainder of Defendants' Arguments Create no Basis for Denying the Motion.**

The remainder of the Response spirals downward into a desperate litany of counter-accusations which constitute no defense to the Motion. As such, Toste disposes of them briefly.

First, this Court made abundantly clear to all parties its aversion to modifying its scheduling order, regardless of the reason. Doc. 75, 109, 110, 112, 135, 142, 146, 160, 205.

Second, the issue is not whether Defendants' discovery objections were sustained: the issue is what happened once Defendants were ordered to respond to Toste's debt collector discovery, as permitted by Judge Becerra. They began by first (undisputedly) violating Judge Becerra's discovery deadline. Doc. 207 p.10. [12] Third, contrary to Defendants' assertions otherwise:

---

[12] The "object at the good faith conference and then withdraw the objection once Toste has expended time and effort" approach is another tactic employed by Defendants in their bad faith defense strategy. It was most recently engaged in response to the Motion to Bifurcate. Doc. 211. Another instance was the service of four Rule 11 motions but only filing two [Doc. 193, Doc. 194], after the deadline for Toste to respond had passed and he had conducted his full analysis of each on the merits. Yet another instance, this time requiring judicial intervention [Doc. 170, 177], was when Defendants objected on the basis of confidentiality to Toste using debt collector discovery

9

- Defendants objected to the production of what turned out to be 371 pages of notices of intent to lien, 311 pages of notices of intent to foreclose, 217 pages of foreclosure complaints, and 217 pages of claims of lien, [Doc. 212 pp. 13, 17-18; Doc. 163-3 nos. 1, 2, 3, 4, 5; 163-1 nos. 1, 2, 3, 4, 5; 163-2 nos. 1, 2, 3, 4, 5] all of which they were ultimately ordered by Magistrate Judge Becerra to produce. Doc. 212 p. 13, 17-18; Doc. 130.

- Defendants stated they considered confidential "all notices sent to owners" and "retainer agreements" [Doc. 169], regardless of their argument otherwise. Doc. 212 p. 14. *See* Ex. "A". Toste never agreed that they were confidential and Defendants withdrew their objections to the Motion to File Under Seal. Doc. 212 p. 19; Doc. 169; Doc. 170; Doc. 171; Doc. 177.

- The Notices of Intent letters were not redacted by Toste [Doc. 212 p. 19]; they were produced in that form by Defendants via link to Dropbox: https://www.dropbox.com/sh/4tnsowew01ok75v/AAD4Q6DrZtJFRVeYKD1uabLSa?dl=0. Ex. "A."

- The Court recognized that this case presented straight forward issues, contrary to Defendants' assertions otherwise. Doc. 212 p. 19; Doc. 146.

- Toste raised the failure to produce a privilege log at the hearing. Doc. 212 n.11; Doc. 144-6 P 97 L17-21.

- Toste argued that the post-dismissal Rule 11 Motions, not the one directed to Count IV, support sanctions. Doc. 207 pp. 12-16.

- Whether Toste is successful on the appeal or not, neither the motion nor the appeal is frivolous. Doc. 212 n. 10. The Motion does not address the merits of the standing issue, it targets Defendants and their counsel's conduct during the litigation. Doc. 207. The appeal is not frivolous where "[t]he full requirements of standing in debt collection cases are still being determined." *Gartrell v. J.J. Marshall & Assoc., Inc.*, No. 3:19-cv-442-TJC-JBT, 2022 WL 376050 at *1 (M.D. Fla. Feb.8, 2022) (citing H*unstein v. Preferred Collection and Mgmt. Servs. Inc.*, 17 F.4th 1103 (11th Cir. 2021) (ordering *en banc* review of FDCPA case)).

Finally, the last five pages of the Response critique Toste's actions in pursuing discovery. But Toste's actions are not the subject of the Motion: Defendants, Jacobs, Golden and the Golden Firm's actions are. Toste's actions and the attorneys' fees and costs he incurred in this case will become relevant only after the Court rules on the issue of entitlement. Toste thus reserves the right to respond to such critique in due course.

## **CONCLUSION**

For these reasons and those in the Motion, the Motion is properly granted.

---

in support of his response to Defendants' motion for summary judgment. Doc. 169. Once the Court intervened, Defendants withdrew their objection. Doc. 171.

Respectfully submitted,

By: __/s/ Thais Hernandez__  
Thais Hernandez, Esq.  
Florida Bar No. 180998  
The Law Firm of Thais Hernandez, Esq.  
8004 N.W. 154 Street #414  
Miami Lakes, Florida 33016  
Tel: 786.923.0850  
Fax: 305.570.2192  
Email: thernandezlaw@bellsouth.net  
*Attorney for Plaintiff Segundo Toste*

By: ***/s/ Anthony Dieguez***  
Anthony Dieguez, Esq.  
Florida Bar Number: 155409  
Attorney E-mail Address: anthony@dieguezlaw.com  
Rebekah E. Guerrero, Esq.  
Florida Bar Number: 1002231  
Attorney E-mail Address: rebekah@dieguezlaw.com  
DIEGUEZ & ASSOCIATES, PLLC.  
7950 NW 155 Street, Suite 207  
Miami Lakes, FL 33016  
Telephone: (305) 556-4106  
Fax: (305) 362-3902  
*Attorney for Plaintiff Segundo Toste*

By: __/s/ Alejandro Vilarello__  
Alejandro Vilarello, Esq.  
Florida Bar No. 358177  
E-mail: AVLaw@Vilarello.com  
Alejandro Vilarello, P.A.  
16400 NW 59th Avenue, 2nd Fl.  
Miami Lakes, FL 33014  
Phone: (305) 827-5665 x: 148  
E-Fax. (786) 429-0957  
Cell: (305) 299-5550  
*Attorney for Plaintiff Segundo Toste*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2022 I electronically served via CM-ECF the foregoing document on all counsel of record on the below Service List.

__/s/ Anthony Dieguez__  
**ANTHONY DIEGUEZ**  
Fla. Bar No. 155409

## SERVICE LIST

Thais Hernandez, Esq.  
Florida Bar No. 180998  
The Law Firm of Thais Hernandez, Esq.  
8004 N.W. 154 Street #414  
Miami Lakes, Florida 33016  
Tel: 786.923.0850  
Fax: 305.570.2192  
Email: thernandezlaw@bellsouth.net  
*Attorney for Plaintiff Segundo Toste*

Alejandro Vilarello, Esq.  
Florida Bar No. 358177  
E-mail: AVLaw@Vilarello.com  
Alejandro Vilarello, P.A.  
16400 NW 59th Avenue, 2nd Fl.  
Miami Lakes, FL 33014  
Phone: (305) 827-5665 x: 148  
E-Fax. (786) 429-0957  
Cell: (305) 299-5550

Dale T. Golden, Esq.
Florida Bar No.: 0094080
dgolden@gsgfirm.com
Joseph C. Proulx, Esq.
Florida Bar No.: 0056830
jproulx@gsgfirm.com
GOLDoc.N SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
Fax: (813) 251-3675
*Attorneys for Defendant Russell S. Jacobs, P.A., Defendant Pablo A. Arriola, and Defendant Scott R. Shapiro*

*Attorney for Plaintiff Segundo Toste*

Anthony Dieguez, Esq.
Florida Bar Number: 155409
Attorney E-mail Address:
anthony@dieguezlaw.com
Rebekah E. Guerrero, Esq.
Florida Bar Number: 1002231
Attorney E-mail Address:
rebekah@dieguezlaw.com  DIEGUEZ & ASSOCIATES, PLLC.
7950 NW 155 Street, Suite 207
Miami Lakes, FL 33016
Telephone: (305) 556-4106
Fax: (305) 362-3902
*Attorney for Plaintiff Segundo Toste*